## PAUL THORNDIKE *vs.* ABRAHAM RICHARDS.

A vote of the proprietors, that a specified portion of their common lands be sold by their standing committee at public or private sale, and that a deed thereof be given to the purchaser by their Clerk, approved by the committee, is a mere authority to sell, and does not convey the land without a deed.

Where the description in the deed, of the land intended to be conveyed, is " all that tract of land called and known by the name of *Pitts* or *Beauchamp Neck,* lying in the town of *Camden,* and bounded on land of *Ogier,* land of *Thorndike,* on a *Pond, Goose Harbour,* and the *Ocean;*" no more land passes, than is included within those boundaries, although the *Neck* may extend farther.

THIS was a writ of entry brought to recover a tract of land in *Camden,* and was tried upon the general issue.

The demandant offered in evidence a copy of a deed from *John Molineaux,* clerk of the proprietary, known by the name of the Twenty Associates, to *William Molineaux,* dated *September* 14, 1790, which is to be found in the case, *Thorndike* v. *Barrett,* 3 *Greenl.* 380; and a deed to him from the administratrix of *William Molineaux,* conveying the tract described in the writ. The whole of the descriptive part of the deed from the proprietors to *Molineaux* is given in the opinion of the Court in the present case.

The tenant offered in evidence a deed from the same Twenty Associates, dated *February* 15, 1806, conveying the demanded premises to *Joseph Pierce,* a deed from said *Pierce* to *Daniel Barrett,* a deed from *Barrett* to *Abraham Richards,* and also a deed from him to the tenant, all conveying the demanded premises by a pertinent description, and the latter containing after the description these words, " and being a part of *Pitts* or *Beauchamp Neck.*"

The questions submitted for the opinion of the Court were:

1. Whether the grant and deed of the Twenty Associates to *William Molineaux* confined the extent of his grant to the premises included within the boundaries, *viz:* on land of *Ogier,* on land of *Thorndike* and the *Pond;* or whether the grant included all the land on *Beauchamp Neck* situated beyond those boundaries.

2. Whether the tenant, by the terms of the deeds referred to, is estopped, so that he cannot be permitted to prove, that the demanded premises are not a part of *Beauchamp Neck.*

The question of estoppel was fully argued, but as the opinion of the Court was made on other grounds, whereby the consideration of this became unnecessary for the decision of the action, neither the arguments nor the substance of the deeds, relating to this point, are given.

The case was argued in writing by

*F. Allen,* for the demandant, and by

*Thayer* and *J. & E. Shepley,* for the tenant.

In the argument for the demandant the following positions were taken.

1. That the demanded premises passed by the *votes* of the proprietors.

The paper called a deed, from them to *William Molineaux,* is in fact nothing more than an exemplification of the votes passed by the proprietors and certified by the clerk. As a deed merely, being by *John Molineaux* under his own hand and seal, it would pass nothing. *Elwell* v. *Shaw,* 16 *Mass. R.* 42; *Stinchfield* v. *Little,* 1 *Greenl.* 231. But as a certificate of the vote, it is effectual, and passes the premises described in them. *Thorndike* v. *Barrett,* 3 *Greenl.* 380; *Mayo* v. *Libby,* 12 *Mass. R.* 339; *Springfield* v. *Miller, ibid,* 415; *Codman* v. *Winslow,* 10 *Mass. R.* 146. At the meetings they voted, " that *Beauchamp Neck* be sold", that they " sell all the unappropriated land on *Beauchamp Neck*", and that " the clerk execute a deed of *Beauchamp Neck*". These terms are sufficiently comprehensive to include the demanded premises. As the land demanded is a part of *Beauchamp Neck,* it passed by the votes; and all further proceedings in relation to it are merely void.

2. The clerk could not by any description of his, restrict or enlarge the description contained in the votes.

He had as much power to convey more, as he had to convey less, than he was directed and empowered by the votes. He was a mere ministerial officer, without any discretion of his own. That part of the description, " all that tract or parcel of land call-

ed and known by the name of *Pitts* or *Beauchamp Neck*, lying and being in *Camden*," was according to the authority given the clerk by the votes. This was a general and sufficient description. He however does proceed to define the bounds of *Beauchamp Neck* as on *Thorndike, Ozier*, and the *Pond*, thereby excluding a part of *Beauchamp Neck*, viz. the premises demanded. This is void for want of authority, and for that cause, does not restrict the premises conveyed to those bounds.

3. But if the clerk had possessed sufficient authority, and indeed had himself been the owner of the land, general words are not restrained or restricted by words added *ex majori cautela*. *Bott* v. *Burnell*, 11 *Mass. R.* 163 ; *Worthington* v. *Hylyer*, 4 *Mass. R.* 196 ; *Keith* v. *Reynolds*, 3 *Greenl.* 393.

In *Keith* v. *Reynolds*, the reporter's note is, " where a parcel of land is conveyed, as being the whole of a certain farm, which is afterwards described by courses and distances, which do not include the whole farm ; so much of the description will be rejected, as that the whole may pass." The case itself warrants the note of it. Now the description in that deed, " a certain tract of land or farm," is not more definite, than " *Beauchamp Neck*."

4. If there are two clauses, or parts, in a deed repugnant, the one to the other, the first shall be retained and the latter rejected, though it is otherwise in a will. *Shepherd's Touchstone*, 88 ; *Worthington* v. *Hylyer*, before cited.

The latter case is directly in point, or as far as there is any difference, it is strongly in favor of the demandant. There the general words were, " all my farm on which I now dwell." Then follow the descriptive words, particularly bounding out a tract of land, but an entirely different one from the first. The general words were held to govern, and to control the specific boundary, which was wholly rejected. No part of it was permitted to stand against the general description ; and this too in a case where the grantor himself owned the land, was at liberty to use his own language, and could convey what he pleased. The intention of the parties is to govern, but that intention is to be sought from the terms of the deed. On inspecting the deed no one can doubt, but that the Twenty Associates intended to convey the demanded premises.

The counsel for the defendant in their argument contended :

That it appeared by the report, that the demanded premises were not included in the particular description in the deed, and did not pass thereby ; and that the demandant had no title unless it passed by the *votes* of the Twenty Associates. No shadow of title is shewn to maintain the action, unless from this deed, or these votes. The votes are recited in the deed by way of preamble, but precede the portion of it containing the words of grant, as well as of description of the premises granted.

There are but two votes of the proprietors recited in the deed, or appearing in the case. The first of these merely authorises their clerk to execute deeds to be approved by two of the Committee. It is not pretended that this vote of itself passes any title to land. The other vote declares, " that *Beauchamp Neck* be sold by the standing committee either by public or private sale," and directs the manner of sale and the disposition of the money. This vote passes no title from the proprietors. It is a mere authority to sell, and if nothing more had taken place ; if in fact no deed had been given ; the votes would have been wholly inoperative. The counsel for the demandant has likened it to the case of *Mayo* v. *Libby,* 12 *Mass. R.* 339, where a resolve of the legislature, quieting settlers on the State lands, passed a title to such settlers. No similarity in principle exists. The resolve clearly shews, that the State, by that alone, intended to part with all their interest in the land ; and the persons intended to take it are also distinctly pointed out. True it is, that the names are not given, but it is only to find, who had settled on the land, and the description is perfect. The name of the settler could be ascertained on enquiry, and this was sufficient. *Com. Dig. Grant, B.* 1.

But in our case, the title was designed to remain in the proprietors until other acts were done, and among them, giving a deed of the land. Here, too, there was no indication in any manner of the person to take, and no mode pointed out to ascertain, why any one individual rather than another, should be the grantee. These two essential requisites are wanting, and nothing can by possibility pass.

Nor can the vote be construed to pass the title by way of covenant to stand seized to uses. Here also, the two essential ingre-

dients are wanting; the intention to pass a title, and the covenantee, or person designed to take.

The other votes are mere votes of a committee, and can have no effect to convey a title. The principle of law, which authorises towns and proprietors of lands to convey by vote, does not extend to a committee authorized to sell, nor do the decided cases warrant such inference. *Codman* v. *Winslow*, 10 *Mass. R.* 146; *Springfield* v. *Miller*, 12 *Mass. R.* 415. And besides, the deed was to be given by the clerk, and not by the committee.

No title therefore could pass from the proprietors to *Molineaux*, unless it was conveyed to him by the deed. The vote of the proprietors had determined what should be a proprietor's title to pass land, and it was by way of a *deed* executed by their clerk, and approved by at least two of the committee. The principle, that an attorney must execute a deed in the name of his principal does not apply to cases, where proprietors acting in a corporate character give authority to convey, *and also prescribe the manner of doing the act.* The cases, deciding that the attorney must act in the name of the principal, are all restricted to attempted conveyances, where the mode of conveyance is not pointed out in the instrument, or vote, giving the authority; and such must have been the grounds of the decision in *Thorndike* v. *Barrett*, 3 *Greenl.* 380, and justifies the remark, that the case differed from *Stinchfield* v. *Little*, 1 *Greenl.* 231. The deed being executed by the agent of the proprietors, in the mode by them directed, is their deed. By that alone the demandant must obtain his title, if any he has.

The deed does not convey the demanded premises. As the boundaries of the tract of land described in the deed do not include the land demanded, such construction must be given to the deed, as to include a different tract, or the action must fail. There is nothing in the case, or in the deeds referred to, tending to shew any particular tract of land designated as *Beauchamp Neck*, and therefore, even if there had been an intention to convey, nothing would have passed for the uncertainty. But there is evidence on the face of the deed, that the whole *Neck* was not intended to be conveyed by it. The committee did not agree to sell to *Molineaux* the *Neck*, but only a portion of it; to sell

only "all the unappropriated land on *Beauchamp Neck*." How great a portion of it was then unappropriated does not appear, except from the boundaries of the tract described in the deed. The land too was sold by the acre, which precludes the supposition that any indefinite quantity was intended. The only construction of the deed, which will give effect to all its parts, is the plain and obvious one; that so much of *Beauchamp Neck* was conveyed as is described within the boundaries. The case of *Worthington* v. *Hylyer*, has been insisted on, as directly in point for the demandant. But the cases have very little resemblance in any respect, and none in principle. That was a case, where two distinct and separate tracts were described in the deed, and the question was which should pass. Here there is but one tract described in the deed, and but one in question between us; and we differ only in the extent of it.

Strike out the words "called or known by the name of *Pitts* or *Beauchamp Neck*," and the description is as perfect, as the power of man can make it. Those words only designate the part of the town of *Camden*, wherein the land is.

The obvious meaning of the deed is the same, as if the words "which is," had been inserted before the words "butted and bounded." As the demandant can recover only on the strength of his own title, he cannot support his action; even if he has succeeded in shewing, that we are estopped to set up ours.

The opinion of the Court was drawn up and delivered at a subsequent term, by

Weston C. J. — The validity of the deed by the Twenty Associates, by their clerk, approved by their standing committee, of the fourteenth of *September*, 1790, to *William Molineaux*, was before this Court, in the case of *Thorndike* v. *Barrett*, 3 *Greenl.* 380. It was there contended, that there was no vote of the propriety, conveying the land to *Molineaux*, and that if they authorised any person or persons, to sell and convey their lands for them, that power was to be exercised, by making a deed, conforming to the settled principles of law. But it was holden by the Court, that under the power which had been given to the proprietors of lands in common, to order, manage, improve, divide

and dispose of their lands, in such way and manner, as shall be concluded and agreed upon, by the major part of the proprietors present, voting respectively according to their interests, the deed might be sustained in virtue of the vote of the propriety of 1768. And having been made, executed, and sanctioned, in the manner and form prescribed by a vote of the proprietors it was holden by the Court, that they never could be permitted to deny, that the title to the lands, described in the deed, passed to the grantee. The late Chief Justice of this Court, in giving the opinion pronounced by him in that case, further states, that the deed under consideration " has several peculiar characteristics, which distinguish it from all those, with which it has been compared ; and not deeming the decisions in those cases as necessarily applicable to this, we feel authorized, as well as disposed, to pronounce the deed, under all the circumstances attending it, as a conveyance of the land therein described."

We are now called upon, to determine the limit and extent of the land, conveyed by that deed. It is preceded by a long recital of several votes of the propriety, and of their standing committee, upon which the authority of the clerk to make the deed is based. Then follows in form the deed itself, made by him in his official capacity, by which there is conveyed to the grantee, " all that tract or parcel of land, called and known by the name of *Pitts* or *Beauchamp Neck*, lying and being in the township of *Camden*, and County of *Hancock*, and Commonwealth of *Massachusetts*, butted and bounded as follows, *viz.* north-west on land of *Abraham Ogier* and land of *Robert Thorndike*, containing fifty acres, and a pond, south-west on *Goose Harbour*, south-east and north-east on the *Ocean*, containing five hundred acres more or less." These bounds, thus definitely pointed out, which were well known, and have been ascertained, exclude the land in controversy.

But it is urged, that although not within the particular boundaries given, it is a part of *Beauchamp Neck*, and therefore passes under that general term, which it is said must prevail over the special description. The land as bounded, was not the less known and called by the name of *Beauchamp Neck*, because that *Neck* might also embrace a few acres, not within the boun-

daries given; The whole description, fairly understood, conveys all the tract of land, called *Beauchamp Neck*, which lies within those boundaries. Looking at the deed, without reference to the recitals, we perceive no conflict or incongruity in the description. The limits prescribed, are plain, intelligible and well known. They cannot be misunderstood. To depart from them, would be to pervert the manifest intention of the parties. *Beauchamp Neck*, unaccompanied by any terms of qualification or restriction, would doubtless embrace all the land, known by that name. From the recitals it appears, that the propriety authorized the sale of the land, using that term ; and that the standing committee had agreed to sell all the unappropriated land on *Beauchamp Neck*. But the recitals, from which the authority to convey is deduced, and which set forth the progress and close of the negotiation for the sale, are only a preamble to the conveyance, which followed afterwards in due form, and where we are to look for the operative words. The variance arises only from the omission of the small triangular piece of land now in dispute, of about five acres, detached and separated from the other land, by the intervention of the pond, and which being omitted, would enable them to make the pond one of the boundaries.

It is however insisted, that the clerk had no authority to depart, in any degree, from the previous votes ; but he was under the direction of the standing committee, to whom the business was *confided, and they expressly, and under their hands, approv*ed of the deed drawn by him. It was accepted also by the grantee, who must have understood that he was *restricted to the* very precise and exact limits, set forth in the deed. And we are very clearly of opinion, that the demanded premises, not being within those limits, the demandant has failed in his title. And this is the conclusion, to which we feel constrained to come, if these premises are to be taken and regarded as a part of *Beauchamp Neck*. Whether therefore, the tenant is, or is not estopped to deny that fact, it is not necessary to decide.

*Demandant nonsuit.*