## IRA MOORE *versus* JOSEPH GRIFFIN, &. *al.*

The intention of the parties to a conveyance of land is to be carried into effect, if it be possible; and the deed should be so construed, if it can be, that all parts of it may stand together.

To give effect to the intention of the parties, general words may be restrained by a particular recital, which follows them, when such recital is used by way of limitation or restriction.

But if the particular recital be not so used, but be used by way of reiteration and affirmation only of the preceding general words, such recital will not diminish the grant made by the general words.

Thus, where the land conveyed was described as " one half of a tract of land formerly the estate of H. W. to wit, that part of said tract next to and adjoining Harrisicket river; said tract begins at a large rock by Little river, thence N. 45° W. to Harrisicket river, and bounded round by the shore to said rock," the land of H. W. extending to the river, in which the tide ebbed and flowed; *it was held*, that the land granted was not restricted to the shore, but extended to the river.

Neither the colonial ordinance of 1641, nor the common law, authorizes the taking of " muscle-bed manure" from the flats of another person between high and low water mark on tide waters.

Where an individual attempts " to establish a common right in all the inhabitants of " a town, to enter upon the flats of another, and take therefrom " muscle-bed manure," an inhabitant of that town is not a competent witness to establish such right.

THE facts in the case are stated in the opinion of the Court.

*Mitchell* argued for the plaintiff, and contended, that as the land of the plaintiff was bounded on Harrisicket river, and

began at a rock in the river, and run along that line, that the margin of the river and at low water mark was intended. The words at the shore, and by the shore, are equally applicable to the line at low or high water mark. This view is aided by the consideration, that this originally was a partition line of the point of land, and the deeds must have been intended to convey the whole of that side. 3 Kent, 427; 1 Sim. & St. 190; Col. Ord. of 1641; *Storer* v. *Freeman*, 6 Mass. R. 435; 2 Dane, 693.

The right set up was, that every inhabitant of the town had the right to take muscle-bed manure there, and of necessity, each must have an interest. *Lufkin* v. *Haskell*, 3 Pick. 356; *Odiorne* v. *Wade*, 8 Pick. 518.

*Adams*, for the defendants, said that there was a wide difference in the construction of grants of land bounded on rivers where the tide ebbed and flowed, and where it did not. On tide waters, a grant of land, bounded on the shore, extends only to high water mark. *Dunlap* v. *Stetson*, 4 Mason, 349; *Lapish* v. *Bangor Bank*, 8 Greenl. 85; *Nickerson* v. *Crawford*, 16 Maine R. 245; *Hatch* v. *Dwight*, 17 Mass. R. 289; *Parker* v *Cutler Mill-Dam Co.* 20 Maine R. 353. But the bounds also show, that high water mark was intended, as the oak tree must be on or above it, and the stone is on the shore, at high water mark. To, from and by are terms of exclusion. *Bradley* v. *Rice*, 13 Maine R. 198.

But if the grant of the plaintiff did extend to the sea, or low water mark, the public have the right to fish, fowl, and take sea manure on the flats. 2 Dane, 693 to 700.

The testimony offered, and rejected by the Judge, ought to have been admitted. 1. The verdict could not be evidence in any other suit between different parties, and therefore there was no interest. 2. If any interest, it was too minute, and remote to exclude the witnesses. 3. The witnesses were admissible from the necessity of the case. 3 T. R. 27; 4 Mass. R. 488; 7 Mass. R. 398; 13 Mass. R. 199; 18 Maine R. 49; 2 Fairf. 341.

The opinion of the Court was afterwards drawn up by

SHEPLEY J. — This action is trespass *quare clausum.* The trespass alleged, is an entry upon the land of the plaintiff situated in the town of Freeport, and the taking and carrying away therefrom of six gondola loads of muscle-bed manure. The defendants admit, that they entered upon the shore of Harrisicket river within the flux and reflux of the tide waters opposite to and within one hundred rods of the plaintiff's farm, and took and carried away the manure; but they deny, that they committed any trespass upon the plaintiff's land. The farm of the plaintiff is on the westerly side of a point of land extending into Harrisicket bay, and the tide flows in the river on the westerly side of the farm about four hundred rods. The point of land appears to have been formerly within the limits of the town of North Yarmouth, and to have been anciently owned by Thomas Shepard, and at that time called Shepard's neck. The title to it was confirmed to Henry Woolfe, who appears to have been the heir of Shepard, by a committee of the proprietors of that township, August 24, 1733. The bounds were then ascertained, by a survey made by Edward King, to be southwesterly by Harrisicket bay, being the same body of water, which in subsequent conveyances was called Harrisicket river. Henry Woolfe, by his will approved October 1, 1759, devised the same to his daughters Mary and Rachel in equal halves. Rachel, by the name of Rachel Moxey, widow, conveyed her half to Solomon Loring and John Hayes on October 2, 1761, bounding the neck of land as it was originally bounded in the confirmation to her father. There would seem to have been a division between the owners of the neck, made after this conveyance, but no record of it is produced. On June 25, 1805, Jacob and Rachel Loring, reciting that they are the heirs of David Cushing Loring, who was probably the heir, devisee, or grantee, of Solomon Loring, conveyed the westerly half of the neck to George Lincoln. It is contended, that the land conveyed by this deed was bounded by the shore, and that such cannot be the true construction of the deed as to include it. The description of the land con-

veyed is as follows : — "One half and one acre more than half of a tract of land containing two hundred and sixty-five acres, more or less, in said Freeport, and was formerly part of the estate of Capt. Henry Woolfe, deceased, to wit, that part of said tract next to and adjoining Harrisicket river, with liberty to set a barn-on the other part joining the dividing line ; said tract begins at a large rock by Little river, then N. 45⁰ W. to Harrisicket river, and bounded round by the shore to said rock ; and said dividing line begins at a stake in the middle of said N. 45⁰ W. course, then S. 44⁰ & $\frac{3}{4}$ W. one hundred and seventeen rods and ten links, then N. 45⁰ W. three rods and thirteen links, then S. 70⁰, 10′ W. one hundred and six rods, then S. 32⁰ W. one hundred and two rods and twenty links, then S. 24⁰ and $\frac{1}{4}$ W. sixty-five rods to an oak by the shore, with the buildings thereon." The rock by Little river was on the easterly side of the neck ; the course N. 45⁰ W. was across the neck to Harrisicket river ; and being then bounded round by the shore to the rock, it is evident, that this is a description of the whole neck, bounding it by the shore. Then follows a designation of the line, which divides the western from the eastern half, and this line is not extended to the water, but to an oak by the shore. The preceding part of the description only relates to the land conveyed. And it is one half a tract of land formerly part of the estate of Henry Woolfe and "that part of said tract next to and adjoining Harrisicket river." The neck was not in fact bounded by the shore, but by the bay or river, while it was owned by Woolfe. And there can be no doubt, that it was the intention of the parties to convey the westerly half of the tract, which he owned ; and this intention is clearly expressed by stating, that the tract conveyed is next to and adjoining the river. The fact, that the neck or whole tract was erroneously described as bounded on the shore, cannot control the boundaries of the lot conveyed. Nor can the fact, that the dividing line was not extended to the water, but terminated at an oak by the shore, have any influence to withdraw the whole westerly bound of the tract conveyed from the water to the shore line. And the land conveyed must be

considered as adjoining Harrisicket river according to the description of it in the deed.

The several deeds of conveyance from the heirs of George Lincoln to James Johnson, either refer to the description contained in the last deed for a description of the land conveyed, or describe it in the same manner.

James Johnson conveyed the farm to Alfred Soule on October 31, 1834, by a double description ; one general, and the other by particular metes and bounds. The particular description bounds the farm by the shore. It commences " at the shore on Harrisicket river and extends the line easterly to the line dividing the neck into halves, and then it follows that line, " to an oak by the shore, then northeasterly by the shore to the first bounds mentioned." The general description, which precedes the particular one, is as follows, " a certain tract of land situated in said Freeport containing one hundred and thirty-five acres, more or less, being the same land I purchased of the heirs of George Lincoln, late of Freeport, deceased." This general description was sufficient to convey the estate, although the deeds from the heirs of Lincoln were not expressly referred to. For the land purchased of those heirs could be certainly ascertained, and the grant would thereby be made certain and effectual. *Whistler's case,* 10 Co. 63. The intention of the parties is not only apparent, but it is declared to be to convey the same land purchased by the grantor of the heirs of George Lincoln. This intention is to be carried into effect, if it be possible. A conveyance should be so construed, if possible, that all parts of it may stand together. To give effect to the intention of the parties, general words may be restrained by a particular recital, which follows them, when such recital is used by way of limitation or restriction. But if the particular recital be not so used, but be used by way of reiteration and affirmation only of the preceding general words, such recital will not diminish the grant made by the general words. And there can be no doubt, that the design of the particular description in this deed was to describe the land conveyed by the general description more perfectly, and

not to limit or diminish the grant. It is laid down in the case of *Swift* v. *Eyres*, Cro. Car. 546, as a rule, that the addition of a false thing shall never hurt the grant " for the addition of a falsity shall never hurt, where there is any manner of certainty before." The case of *Stukley* v. *Butler*, Hob. 168, as relieved by PARKER C. J. in the case of *Cutler* v. *Tufts*, 3 Pick, 278, of the erroneous statements of it as reported in other books, is to the same effect. He states the result of a careful examination to be, that *videlicets, provisos, habenda,* &c., " may explain doubtful clauses precedent, and may serve to separate and distribute generals into particulars ; yet that they can never be suffered to restrain or diminish, what is expressly granted ; if they can be construed to have no other meaning, they are void for repugnancy." It is true, that there is no *videlicet* in this deed between the general and particular description. But by reading the deed with one introduced there, it will be perceived, that the sense will not be altered, and that the particular description is of the character usually introduced by a *videlicet*. This deed must therefore receive such a construction as to convey the farm bounded, as it had been while owned by Lincoln, westerly adjoining the river.

Alfred Soule conveyed the farm to the plaintiff on May 10, 1840, by a similar description, substituting " the late James Johnson," his grantor, for " the heirs of George Lincoln, late of Freeport." And the same rules of construction and remarks are as applicable to this deed as to the last deed.

The plaintiff having thus established his title to the farm as bounded upon the river, the ordinance of 1641 declares, that " the proprietor of the land adjoining shall have propriety to the low water mark, where the sea doth not ebb above a hundred rods, and not more wheresoever it ebbs further." Free fishing and fowling is therein reserved to every householder. And Mr. Dane says, c. 68, art. 3, § 2, that the ordinance has been constantly practiced upon " as to fishing and fowling, taking sand, sea manure, and ballast, as the right of soil in flats ground." No such right of taking sand, manure, or ballast is reserved in the grant made to the owner of the

adjoining land. And Mr. Dane does not refer to any authority or decision in support of that practice. No such practice can be recognized as depriving the legal owner of his rights according to his title, unless supported by proof, that would establish a common right. The language of the reservation in the ordinance cannot be extended beyond the obvious meaning of the words fishing and fowling. In the case of *Bagott* v. *Orr*, 2 B. & P. 472, although the right to take shell fish on the shore by the common law was admitted, the right to take shells was not. Neither the ordinance nor the common law would authorize the taking of " muscle-bed manure" from the land of another person.

The defendants attempted also to establish a common right in all the inhabitants of the town of Freeport and vicinity to enter upon the flats and take such manure. And offered two of the inhabitants of that town to prove it; but their testimony was excluded. It is provided by statute, c. 115, $ 75, that the inhabitants of towns and certain other *quasi* corporations, and the members of certain incorporated societies, shall be competent witnesses, when the corporations or societies are parties, or interested in the event of the suit. But the town of Freeport in its corporate capacity is not interested in the event of this suit; and the inhabitants are not made competent witnesses, when they are interested in the event of the suit, as individuals. And they would be interested to establish a common right to take such manure in all the inhabitants of that town, because the verdict which should establish or deny such common right, when one only is a party, might be evidence for or against all others. *Lufkin* v. *Haskell*, 3 Pick, 356. The testimony offered was properly rejected. It is unnecessary to decide whether such a common right, as is alleged in the brief statement, could have been established by any proof.

*Defendants defaulted.*