DAVID D. STEWART *vs.* EBER DAVIS *et al.*

*Deed—construction of.    Mortgager and mortgagee—rights of.*

The description in a deed—"The farm on which I now live in Pittsfield, being lot No. 9, in the second range of lots in said town, according to D. Stewart's plan and survey—" conveys only so much of the "farm" as is within "lot 9."

When those holding under the mortgager have entered and ousted the mortgagee in possession, he may maintain against them a writ of entry declaring on his own seizin generally, have a judgment as at common law, and claim and recover rents and profits proved.

Such a judgment will not be deemed a waiver of a prior foreclosure commenced by publication; nor will it interfere with the right of redemption.

ON REPORT.

WRIT OF ENTRY to recover possession of certain premises in Pittsfield conveyed in mortgage, August 11, 1868, by William Fowler, who then owned them in fee, to the demandant.    Mr. Fowler owned and occupied during his life, which terminated in December, 1871, as his homestead farm so much of lot No. 9, in the second range of lots in Pittsfield as lay between the lands of Bailey and of Burrill on the north and lot No. 10 on the south, and between Sibley Pond on the west and the Davis or Merrick farm on the east, together with so much of the adjoining lot No. 10 as

lay between Sibley pond and the road to Hartland. The shape of his farm, and the relative situation of the boundaries appear in the following plan :

H. Bailey.    H. Burrill.

Lot No. 9.

Fowler's

Buildings.

Road to Hartland.

Davis' or Merrick Farm.

Sibley

Pond.

Lot No. 10.

Silver Mine.

Ingraham Wheeler.

Road from Canaan to Palmyra.

Ingraham Wheeler.

The title to so much of his farm as was included within the limits of lot No. 9, Mr. Fowler obtained from Davis and McMaster ; his part of lot No. 10 came to him by a different purchase,

from another person, at a later period; but this last lot was bought by him in 1847. In 1868, he thought that a silver mine discovered upon the south westerly portion of his farm, in lot No. 10, was valuable and could be profitably developed. He then came to Mr. Stewart to borrow $1000 for this purpose, offering a mortgage of his place, including the mine, as security. Mr. Stewart examined the premises, but being unfamiliar with the ranges and numeration of lots in Pittsfield, thought the Fowler farm included all the land between that of Burrill and Bailey on the north and the road to Palmyra on the south, and between Sibley Pond on the west and the Davis or Merrick farm on the east; and was ignorant of any other purchase than that by the deed of Davis and McMaster, which he supposed included all the territory within the limits last above indicated. He was induced so to believe by the representations of Mr. Fowler. Accordingly, he consented to make the proposed loan, and drew the mortgage to himself of the farm on which Fowler then lived "bounded on the north by land of Humphrey Bailey and Hiram Burrill, east by the Merrick farm, on the south by land of Ingraham Wheeler, and on the west by Sibley pond;" not then understanding (as before stated) that Wheeler owned any land north of the road to Palmyra, but thinking the parcel which in fact belonged to Wheeler was owned by Fowler, and that all of Fowler's farm lay within the limits of lot No. 9.

In August, 1872, the mortgagee proceeded to foreclose his mortgage by publication in a newspaper. In the spring of 1873 he took possession of the premises and notified the defendants (heirs of Fowler) of it. They subsequently, however, went upon the land, cultivated it and took and carried away the hay and other crops. In his declaration he expressly disavowed any purpose of waiving his proceedings for a foreclosure.

*D. D. Stewart*, pro se.

*H. & W. J. Knowlton*, for the tenants.

VIRGIN, J. The plaintiff demands possession of a tract of land situated in the town of Pittsfield, in this county, described in his

declaration as "bounded on the north by land of Humphrey Bailey and Hiram Burrill, on the east by the Merrick farm, on the south by land owned by Ingraham Wheeler, and on the west by Sibley pond—containing one hundred acres more or less, and being the same farm occupied and owned when in life, by the late W. H. Fowler." By the plan and the testimony of the plaintiff, it appears that "the farm occupied and owned by the late W. H. Fowler" comprised all of lot No. 9, and about twenty acres off of the west side of lot No. 10 adjoining and south of lot 9 and bounded on the west by "Sibley Pond;" and that these premises had been owned and occupied by Fowler as his farm, from May, 1847, when he purchased the western portion of lot 10, to the time of his decease in December, 1871. The specific description does not precisely coincide, nor is it necessarily at variance with the general one; but it is simply defective in not being a full description of either lot 9, or of the Fowler farm. It does not give the correct southern boundary of lot 9, or the eastern boundary of the Fowler farm; but there is no variance between the two descriptions in any other particular than the eastern boundary, and even herein they concur so far as lot 9 is concerned. By rejecting this imperfection, we have the Fowler farm as the tract of land demanded.

The defendants have jointly pleaded the general issue only, the brief statement not having been seasonably filed. *Nul disseizin* admits that the defendants are in possession of the whole premises demanded, claiming a freehold therein, and denies the demandant's right to recover any part thereof. Having the actual possession, which neither party can deny under this issue, the possessory title of the defendants will prevail until the plaintiff shall succeed in proving a better one. The question, therefore, is—who has the better title to all, or any, of the demanded premises; for, under our statute, the demandant can recover any specific part of the premises to which he proves a title, though less than he demanded. R. S., c. 104, § 10; and no more, although the tenant set up no title. *Bruce* v. *Mitchell*, 39 Maine, 390.

The plaintiff's title rests entirely upon the true construction of

Fowler's mortgage to him, of August 11, 1868, wherein the mortgager describes the land as, "the farm in Pittsfield on which I now live"—which must mean the same as—"the farm occupied and owned by the late W. H. Fowler" in the declaration; for the undisputed testimony is that he owned but one farm and lived on that until his death. Hence, if the description stopped here, the plaintiff's title would unquestionably include the whole of the farm; but it proceeds—"bounded on the north by land of Humphrey Bailey and Hiram Burrill, on the east by the Merrick farm, on the south by land of Ingraham Wheeler, and on the west by Sibley Pond." This language is identical with that in the declaration, and as we have seen, is defective, and does not restrict the general description, since it is as applicable to the whole farm as to lot 9 alone, but is not a complete description of either. Neither does the description stop here, but continues—"being lot No. 9, in the second range of lots in said Pittsfield, according to Daniel Steward's plan and survey, containing one hundred acres more or less, and being the same premises conveyed to me by Levi J. Merrick and Daniel McMaster, by their deed dated April 14, 1838, recorded," &c. This reference to the source of title might not necessarily have been sufficient to restrict the well defined prior general description had the intention of the parties, gathered from the whole description, warranted the opinion that it was defective; *Crosby* v. *Bradbury*, 20 Maine, 61, and cases cited; but the reference to the number of lot and plan, not being false, we think is decisive and limits the plaintiff's title under his mortgage to lot No. 9. *Thorndike* v. *Richards*, 13 Maine, 430; *Allen* v. *Allen*, 14 Maine, 387.

The last named case is precisely in point. The description in the demandant's mortgage was, "my homestead farm situated in Jay, being lot No. 13, in range 4, containing one hundred acres, more or less, with the buildings thereon." The "homestead farm" comprised all of No. 13 and a portion of another lot. Weston, C. J., speaking for the court, says: "Asa Allen conveyed to Thomas Allen in mortgage his homestead farm in Jay. In the

same sentence, he describes what that homestead is, giving definite and well known bounds, 'being lot 13 in range 4.' . . He had a right to explain what he meant by his homestead, which he does in terms perfectly plain and intelligible. He may have occupied part of another lot, in such a manner that if he had used the term homestead alone, the land in controversy might have passed. But why should he be precluded from using language in the deed, explaining what he did mean to convey? And if that language is clear and unambiguous, why should not the conveyance be restricted and limited accordingly? . . The land thus described was his homestead; but it would seem not the whole of it. The term, unexplained, would be understood to mean the whole; but explained, the conveyance embraces only the homestead within the limits given, if any regard is to be paid to the intention of the grantor, which is too plainly expressed to be misunderstood." The same principle is sustained in *Herrick* v. *Hopkins*, 23 Maine, 217.

Shall the judgment be conditional or absolute? By the stipulation in the report the court "are to enter such judgment as shall be in accordance with the legal rights of the parties and the law of the case."

It appears that the plaintiff, on August 2, 1872, commenced a foreclosure by publication in a newspaper, in accordance with the provisions of R. S., c. 90, § 5, clause 1; and that in the spring of 1873, after Mrs. Fowler had left the premises, the plaintiff entered and took possession, and notified the defendants thereof. This the plaintiff had an undoubted right to do, notwithstanding he had commenced the foreclosure by publication. The legal estate and the right of possession of a mortgagee in fee result from the legal effect and operation of a conveyance in mortgage; and they continue in him until a full and complete performance of the condition, or a tender equivalent thereto. *Allen* v. *Bicknell*, 36 Maine, 436; *Smith* v. *Johns*, 3 Gray, 519. Nor is there anything legally inconsistent in his taking possession after the publication. *Concord U. Mut. Ins. Co.* v. *Woodbury*, 45 Maine, 453; *Mann* v. *Earle*,

4 Gray, 300. Such entry then being lawful, he was a mortgagee in possession.

But it also appears that soon after such actual entry by the plaintiff, the defendants, against the express objections of the plaintiff, entered, took possession, cultivated the premises and carried off the crops and hay. The defendants thereby became trespassers, and the plaintiff might thereupon bring trespass or a writ of entry against them as disseizors. *Miner* v. *Stevens,* 1 Cush., 486; *Haven* v. *Adams,* 4 Allen, 93. He elected to bring the latter, and thus try his title; which was, not his right to enter and foreclose his mortgage, but his right to maintain the possession and title which he acquired by his entry. And this is the avowed object of his action as set out in his declaration. He is therefore entitled to an absolute judgment as at common law, which, however, will not in any manner contravene any lawful right of redemption. *Haven* v. *Adams, ante.*

Again. It has long been the settled law in this State and in Massachusetts, that a mortgagee may declare on his own seizin generally, and have judgment as at common law against all persons except the mortgager and his successors in title; and even against them unless they pleaded their interest and prayed for a conditional judgment which the court would grant when the condition had been broken; for by so doing the necessity of bringing a bill for redemption was avoided. The substance of these decisions is incorporated in R. S., c. 90, § 7. In the case at bar, a conditional judgment is not claimed by "motion of either party," and the plaintiff has "declared on his own seizin;" hence this section does not require a conditional judgment in this case.

Nor will this action, or the judgment rendered upon it, be deemed a waiver of the foreclosure by publication, since the action was not commenced and prosecuted upon the mortgage for the purpose of foreclosing it, as in *Smith* v. *Kelley,* 27 Maine, 237; *Tufts* v. *Maines,* 51 Maine, 393; but for another expressly declared purpose.

The judgment being absolute, and the plaintiff having claimed

and proved damages for rents and profits, he is entitled to recover therefor the sum of $75; for which sum he will be obliged to account if the mortgage be redeemed. R. S., c. 104, § 11; *Treat* v. *Pierce*, 53 Maine, 79.

> *Judgment for plaintiff for lot No. 9, and for $75, as damages for rents and profits.*

APPLETON, C. J., DICKERSON, BARROWS and DANFORTH, JJ., concurred.