85  294
85  499
85  294
87  185
85  294
90  533
90  545

GEORGE A. BROWN vs. HENRY E. HEARD.

Knox.    Opinion January 27, 1893.

*Deed.  Boundary.  Way.  Shore.*

The plaintiff claimed title to a tract of land under a deed bounding him by the sea shore and a road; and claimed the road to be a boundary as if constructed in a right line with its general course until it should reach the shore, whereas, in fact, in building the road it was deflected northerly and a few rods short of the seashore. *Held,* that the road, as actually built, was made a monument in his deed, and constitutes the plaintiff's boundary.

A clause in a deed, at the end of a particular description of the premises by metes and bounds, "meaning and intending to convey the same premises conveyed to me," *is held* to be merely a help to trace the title, and does not enlarge the grant.

A grant to the sea shore, to the bank of a river, or to the line of a highway does not carry title beyond high water or the side of the river or road.

ON REPORT.

This was a real action to recover the Heard or Brown lot, the question in controversy being the title to a small triangular piece, or gore, of land lying southerly and easterly of a road located, in 1874, by the selectmen of South Thomaston, terminating on the beach at Ash Point.

HEARD, (now BROWN.)

Stone Wall.

Ash Point Road.

Road as travelled.

Locus

C

A    B

Bluff.

N

S

(HINCKLEY, now MOODY.)

A B - Old line between Heard and Hinckley.
C - Old Lime Kiln.

The locus is situated on the southeasterly corner of the lot marked Brown and northeasterly of the lot marked Hinckley (now

Moody) on the chalk plan ; and is thus described in the defend-
ant's brief statement, " bounded southwesterly by land of Moody,.
southeasterly by low water mark, and on the northwest by the
town road leading to the old lime kiln on Ash Point." The
defendant seasonably disclaimed as to the land lying north of
the town road as actually built.

The stone wall and the line A B, prolonged to the sea shore
constituted the original south line of the Heard land which by
sundry conveyances came to one Crockett and from him to the
plaintiff, Brown, in 1877. March 9, 1874, the selectmen of the
town laid out the Ash Point road, a part of which the defend-
ant claimed crosses the Heard premises and cuts off the portion
now in dispute.

Further facts as to this road are stated in the opinion.

The deed to Crockett was in 1876 and the defendant, as one
of the grantors, claimed that Crockett was bounded by the road,
and that no part of the locus passed to Crockett by the deed.
This the plaintiff denied and claimed :

1. Although the selectmen of the town laid out a certain road
in the vicinity of these premises, and the town duly accepted
a certain road, it was not the road that now appears on the
premises in controversy ;

2. That the road mentioned in the deed to Crockett is not
the road across the disputed premises ;

3. That, even if a section of said road does cross and cut off
the premises in controversy, the parties, who entered into the
contract, intended to convey, by their said deeds to Crockett,
all the title that they had acquired from their ancestor, Ruth A.
Heard, which title included all the premises in controversy.

The clause in the deed to Crockett and from him to the
plaintiff, Brown, which became the subject for construction by
the court is as follows : " one other lot situate in said South
Thomaston, [omitting previous calls in the deed not necessary
to an understanding of the question in controversy,] beginning,"
&c. ; . . . "thence S. Easterly to the sea shore ; thence by the shore
as it runs S. Westerly about forty rods to the town road ; thence
N. Westerly by said road about sixty rods to stake and stones,"

&c., (omitting other calls to the place of beginning). . . .
."Meaning and intending to convey to said George A. Brown
the same premises conveyed to me by Robert H. Heard and
others, by deed recorded in Knox Registry, Book 44, Page
259, reference being made to said deed and all references therein
contained."

The plaintiff also contended further that the last clause in the
deed enlarged the prior particular description and conveyed the
whole of the original Heard lot.    The defendant claimed that the
call in the deed, reading " thence by the shore as it runs south-
westerly about forty rods to the town road," is answered when the
line reaches the place where the town road, as located and built
by the town of South Thomaston in 1874, intersects high water
mark ; and that the plaintiff ignores entirely that portion of the
town road running to the " old lime kiln " and claims to go with
that call in the deed to the original south westerly line of the
Ruth A. Heard, lot.

*Mortland and Johnson*, for plaintiff.
*C. E. and A. S. Littlefield*, for defendant.

HASKELL, J.    Writ of entry to recover a tract of land lying
in the angle formed by intersection of the north line of the
Moody lot with the sea shore.

The defendant seasonably disclaimed all the land within the
west angle made by the sea shore and road, and pleaded *nul
disseizin* as to the residue.    The evidence shows that defendant
was not in possession of any part of the land demanded and
lying north of the town road as actually built, the part disclaimed.

This defeats the plaintiff's action, unless he proves a legal
title to more of the land demanded.    He claims title under a
deed bounding his land by the sea shore and by the road ; and
claims the road to be a boundary as if constructed on the land
of Moody, in a right line with its general course, until it should
reach the sea shore ; whereas, in building, it was, in fact,
deflected northerly from his land, a few rods short of the sea
shore, across a point of land, not owned by him, some seven
rods wide, to the sea shore.

This road was laid out by the selectmen, before the plaintiff took his title, "fifty-four rods to the sea shore, thence northeasterly on land of Robert H. Heard seven rods to the old lime kiln." The lime kiln stood on the shore. The article in the warrant was "to see if the town will vote to accept a road running from the end of the Ash Point road, near Robert H. Heard's, to the beach, as laid out by the selectmen." The town voted, "to accept the report of the selectmen in regard to the Heard road, so-called." The road was actually laid and built fifty-four rods to a point short of the sea shore, and then northeasterly seven rods to the sea shore. This road as actually built constituted the plaintiff's boundary. It was made a monument in his deed. It was definite and certain, and must control. *Sproul* v. *Foye*, 55 Maine, 164.

It was contended that the clause in plaintiff's deed, at the end of the particular description of the premises by metes and bounds, "meaning and intending to convey to the" plaintiff "the same premises conveyed to me," &c., should enlarge the specific description in it, given by metes and bounds. Assuming that the language referred to a larger estate than is included by the metes and bounds given, which is by no means certain, the contention cannot prevail. It is merely a help to trace the title, but cannot enlarge the grant. *Brunswick Savings Institution* v. *Crossman*, 76 Maine, 577.

The road ends at the sea shore, high water mark. So does the plaintiff's title. He is bounded, "To the sea shore; thence by the sea shore." This boundary goes to high water mark only. *Storer* v. *Freeman*, 6 Mass. 439; *Nickerson* v. *Crawford*, 16 Maine, 245; *Montgomery* v. *Reed*, 69 Maine, 510.

Sometimes, presumptions arise that the owners of land adjoining the sea or an inland river, or a highway, own the flats, or to the thread of the stream or way. But it is never held that a grant to the sea shore, to the bank of a river, or to the line of a highway carries title beyond high water or the side of the river or road. When the language is of doubtful meaning, requiring construction, as in *Snow* v. *Mt. Desert Isl. Real Est. Co.* 84 Maine, 14, where the bound was the sea—low water

mark—thence around a parcel of land to the shore — high water mark — thence to the first bound, the intent to include the shore, that part between high and low water, is manifest and must govern. So in *Erskine* v. *Moulton*, 84 Maine, 243, where the descriptions are confused, and in other cases, too numerous to mention.                    *Judgment for defendant.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.