S. AHMI *v.* ANNIE WALLER, LI CHEUNG, L. F. AL-VAREZ, EMMELINE M. MAGOON, EMILY K. MEHRTENS, HELEN N. ROSA, MABEL C. LADD, EMILY L. LADD, CHINESE YOUNG MEN'S CHRIS-TIAN ASSOCIATION, J. K. KAUKUA, KAKAKU-MAKA HALUALANI, LIWAI KOELEELE and AB-SALOM ULULAULA, Minors, by their Guardian *ad litem,* KAKAKUMAKA HALUALANI, EDWARD HORE and EN SYAK ASEU.

ERROR TO THE CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED MARCH 17, 1904.     DECIDED MARCH 21, 1904.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

In a deed of "all that piece of land situate at * * * , containing 15-100 of an acre and being the same described by metes and bounds" in a certain royal patent, the area of the land described in the patent being 1 5-100 acres, the description in the patent controls.

An allowance of undue latitude in the cross-examination of one of plain-
tiff's witnesses, resulting in bringing out matters of defense, is not
reversible error, unless the plaintiff is prejudiced thereby.

OPINION OF THE COURT BY FREAR, C.J.

The action below was a statutory action to quiet the title to
a piece of land at Kaakopua, Honolulu, covered by R. P. 217,
L. C. A. 11076, issued to Kalaau. The plaintiff claimed by deed
from a Mrs. Howland, who was Kalaau's devisee. The defend-
ants claimed through deeds made by Kalaau to one Alakema
Naone, and by the latter to Kapika, who was Kalaau's wife and
who, after Kalaau's death, married said Naone. These were
the deeds that were the subject of the decision in *Howland v.
Naone,* 5 Haw. 308.

Two alleged errors are relied on, namely, that the trial Judge
erred (1) in directing the jury to return a verdict for the de-
fendants, and (2) in allowing the defendants to ask the plain-
tiff's witness, Naone, certain questions, which were objected to
as not proper cross-examination.

The question of the propriety of directing the verdict resolves
itself into the question of the construction of the deed from Ka-
laau. That deed of course, in so far as it is effective, prevails
over the will. The question is whether it conveyed the whole
1 5-100 acres covered by the patent, as contended by the defend-
ants, or only 15-100 of an acre as contended by the plaintiff.
The description in the deed (translated from the Hawaiian)
is, "all that piece of land situate at Kaakopua, Honolulu, Island
of Oahu, containing an area of 15-100 of an acre and being the
same described by metes and bounds in Royal Patent number
217." The description in the patent is a full description by
courses and distances, adjoining lands and a diagram, and con-
cludes (translated), "this piece contains 1 5-100 acre, more or
less." The question is whether the description of the area in the
deed or the particular description in the patent which is referred
to in the deed, should control.

The general rule is that a patent, deed or other document re-

ferred to in a deed is to be read as if it were a part of the deed. It is also a general rule that a particular description prevails over a general description. It is a further general rule that a statement of the area of the land conveyed is a comparatively unimportant part of the description, or, as sometimes said, the least important part. From these rules, it follows that the description in the patent which is made by reference a part of the description in the deed should prevail over the mere statement of area in the deed. It is perhaps unnecessary to refer also to other established rules, such as that the construction put upon a deed by the parties, as shown by their possession, is entitled to consideration in a case of latent ambiguity or of conflict between two descriptions and that a deed should be construed most favorably to the grantee. There is indeed much reason to believe that the 15-100 in the deed was a mere mistake in copying, for the reason that it so nearly resembles in form the 1 5-100 in the patent, and it is said that in the record of the deed, the original being lost, the 15 is not directly over the 100 but is somewhat to the left. Moreover, the conveyance is not of a specific 15-100 of an acre, nor even of 15-100 of an acre of a larger tract, but it is of a piece of land at a certain place "containing" a certain area, "and being" the same as that described in the patent. No more emphasis is given to one description than to the other so far as the form is concerned.

It is true, as the plaintiff contends, that the reference to another document has been held not to control in certain cases, as in *Lovejoy v. Lovett,* 124 Mass. 270, and *Thorndike v. Richards,* 13 Me. 430, but in those cases the description in the deed in question was particular and of course would not be controlled by the general reference made to another document merely to show the grantor's chain of title. It is equally true that in some cases a reference to another document has been held to control even a particular description, as in *Bernstein v. Nealis,* 144 N. Y. 347, *Wuesthoff v. Seymour,* 22 N. J. Eq. 66, and *Lippett v. Kelley,* 46 Vt. 514. All these rules are merely rules of construc-

tion, and any one of them will yield to the intention of the parties as clearly shown by the whole instrument.

The other alleged error relied on is that after the plaintiff's witness, Naone, had testified on direct examination as to the relationship of various parties and as to who were living on the land, and, on cross-examination without objection, that Kalaau had devised the property to Mrs. Howland and that the witness had married Kalaau's widow and had lived on the land, he was allowed to be asked further, on cross-examination against objection, a number of questions, such as, how did you happen to live on the land, when did you marry her, did you not live on the land after the death of Kalaau and before you married his widow, under what claim did she live on the land after the death of her husband and before you married her, didn't she claim to have the right to live there under a deed from you, is this a copy of the deed from you under which she claimed to live there (showing witness a copy of a deed in a volume of records from the registry of conveyances) ; also that the witness was allowed, against objection, to read the said record and to testify as to its being a copy of the original, and that after testifying against objection that the "features of the record were similar to those of the deed he had executed to Kalaau's wife, he was allowed to be asked, against objection, do you mean by the use of the word "features" that the words of this instrument are the same as the words of the original; also that after the witness had volunteered the statement that he had received a deed from Kalaau, he was allowed to read the copy of it from the record, against objection, and to be asked if it was a copy of the original; and that the copies in the records were allowed to be introduced in evidence, after the witness had testified that he thought the originals were lost.

Defendant's counsel suggest that this was proper cross-examination, but without much confidence. Their main contention is that if it was not proper its allowance was harmless error. We will assume that it was not proper cross-examination. The latitude allowed on cross-examination is largely within the discre-

tion of the trial judge and the appellate court will not interfere unless that discretion is oppressively abused. If, as in *Hughes v. Westmoreland Coal Co.,* 104 Pa. St. 207, the court had ordered a nonsuit on the theory that the plaintiff's own testimony, brought out improperly on cross-examination, showed that he had no case, there might be reversible error. The testimony so brought out should be considered as if it were the defendant's testimony in chief and left to the jury as such. So, if, as in *Bell v. Prewitt,* 62 Ill. 361, the improper cross-examination was such as to probably influence the verdict, there would be reversible error. But ordinarily the question is one of the proper · order of introducing evidence—which is largely a matter of discretion. In the present case the plaintiff put on evidence after the alleged improper cross-examination but, though having an opportunity to rebut it, made no attempt to do so. The defendants asked, not for a nonsuit on the theory that the plaintiff had shown that he had no case, but for a directed verdict on the theory that the evidence as a whole, whether regarded as plaintiff's or defendants' evidence, required it. It was simply a question of the order of proof of the deeds. The true construction of those deeds required the court to take the case from the jury. The verdict could not have been affected by the error in the order of proof nor was the evidence taken as a practical confession by the plaintiff that he had no case. Great care of course should be exercised in seeing that the cross-examination is not extended unreasonably far and the rule that it should be confined to matters brought out on the direct examination should be observed, but when, as here, no harm resulted, this Court should not set aside the verdict. These questions are discussed more fully in *Booth v. Beckley,* 11 Haw. 518.

The judgment below is affirmed.

*C. W. Ashford* and *T. McCants Stewart* for plaintiff.

*Robertson & Wilder, Kinney & McClanahan, J. A. Magoon, J. Lightfoot, E. A. Douthitt,* for defendants.