**Elizabeth L. PAGE**

v.

**Arthur E. NISSEN and Marjorie H. Nissen.**

Supreme Judicial Court of Maine.

June 26, 1969.

Before WILLIAMSON, C. J., and WEB-BER, TAPLEY, MARDEN, DUFRESNE, and WEATHERBEE, JJ.

DUFRESNE, Justice.

This is an appeal by the defendants (Nissen) from summary judgment in favor of the plaintiff (Page) rendered by the Superior Court upon an agreed statement of facts and exhibits. The points on appeal ascribe error in the Superior Court's award of summary judgment to the plaintiff while denying such relief to the defendants.

The facts are not in dispute. Both parties claim title to a lot of land lying southerly of the Egypt Road so-called in Damariscotta, Maine. This plot of ground is identified as lot Q on a plan referred to as Exhibit #1 in the agreed statement of facts. It does not abut the remainder of the defendants' land which they own on the westerly and easterly sides of the Back Meadow Road, a highway running in a northerly-southerly direction and intersected from the east by the Egypt Road. Both parties rely on deeds from one Laura B. Chapman. The Nissen deed was executed on October 22, 1964 and recorded October 27, 1964, while the Page deed was executed on August 2, 1965 and recorded August 4, 1965. The Nissen deed was a warranty deed, while the Page deed was a quitclaim, otherwise known as a release deed, expressly *"EXCEPTING AND RE-SERVING, HOWEVER, all land heretofore conveyed from the above two parcels by said Arthur A. Chapman, my late husband Rollins M. Chapman and myself."* The parties agree that lot Q is a part of the second parcel of land described in the Page deed.

If the Nissen deed legally conveyed lot Q, the parties admit that a subsequent conveyance of the same lot to Page would be of no avail. The defendants maintain that the Chapman-to-Nissen deed, properly construed, effectively transferred the legal title to lot Q from Laura B. Chapman to them, and we agree.

Cleveland A. Page, Damariscotta, for plaintiff.

Alan C. Pease, Wiscasset, for defendant.

The description in the Nissen warranty deed reads as follows:

"*All that real estate lying* easterly and westerly of the Back Meadow Road and *southerly of the Egypt Road* so-called in Damariscotta, County of Lincoln and State of Maine *of which Arthur A. Chapman died seized and possessed,* together with a small parcel on the easterly side of said Back Meadow Road as described in Quitclaim Deed of Daniel Bisbee recorded in Lincoln County Registry of Deeds, Book 534, page 120, all of which is generally bounded as follows:

Parcel 1: On the north by land of Frank Sidelinger; on the west and south by land of the grantors; and on the east by the Back Meadow Road.

Parcel 2: On the north by land of Milton Plummer et ux; on the east by land formerly of G. E. Gay; on the south by land now or formerly of Flavilla Chapman, and on the west by the Back Meadow Road.

Reference may be had to Quitclaim Deed of Nathaniel Bryant to Arthur A. Chapman recorded in Lincoln County Registry of Deeds, Book 326, page 184." [Emphasis supplied.]

Both parties agree that the real estate of which Arthur A. Chapman died seized and possessed included lot Q and that he devised all of it to Rollins M. Chapman who in turn conveyed it to himself and Laura B. Chapman in joint tenancy with rights of survivorship. Laura B. Chapman, the grantor in both the Nissen and Page deeds, is the surviving joint tenant whose legal title to lot Q is admitted.

■ The Justice below ruled that Laura B. Chapman by her warranty deed to the Nissens did not intend to include lot Q and gave as partial support of his ruling the reason that "it is not likely that she would intend to convey Lot Q as a part of the grant in October of 1964 and turn right around and sell it to somebody else in 1965." Since the case was heard upon an agreed statement of facts and exhibits with no oral testimony, the rule that findings of fact below stand unless clearly erroneous does not apply. We are free to find the ultimate facts from the agreed facts and the exhibits submitted without giving weight to findings inherent in the decision of the sitting justice. In re Edwards' Estate, 1965, 161 Me. 141, 210 A.2d 17; Thacher Hotel, Inc. v. Economos, 1964, 160 Me. 22, 197 A.2d 59; Pappas v. Stacey, 1955, 151 Me. 36, 116 A.2d 497.

The words of the grant in the Nissen deed were: "*All* that real estate lying * * * southerly of the Egypt Road socalled in Damariscotta, County of Lincoln and State of Maine *of which Arthur A. Chapman died seized and possessed*." Where the grant was of all the real estate lying southerly of the Egypt Road in Damariscotta of which the late Arthur A. Chapman died seized and possessed, the deed was sufficient to convey the grantor's title to lot Q which admittedly was the only parcel of land lying southerly of the Egypt Road in Damariscotta of which Arthur A. Chapman died seized and possessed. The grant was as certain and precise as though lot Q has been described by metes and bounds. See Hobbs v. Payson, 1893, 85 Me. 498, 27 A. 519; Bird v. Bird, 1855, 40 Me. 398, 402–403.

■ Having once granted in her deed title to lot Q to the Nissens, Laura B. Chapman could not destroy or nullify the grant by any subsequent clause in the deed itself. Cummings v. Murchison, 1940, 136 Me. 521, 12 A.2d 177; Inhabitants of Town of Canton v. Livermore Falls Trust Company, 1939, 136 Me. 103, 3 A.2d 429.

■ The general rule is that the intention of the parties, ascertained from the deed itself, must prevail, provided that such intention is expressed consistently with the rules of law. Brown v. McCaffrey, et al., 1948, 143 Me. 221, 60 A.2d 792; Pike v. Munroe, 1853, 36 Me. 309.

As stated in Maker v. Lazell, 1891, 83 Me. 562, at page 565, 22 A. 474, at page

475, the general rule that courts will seek *to ascertain the actual intent of the parties* and give effect to that intent when found is not of universal application. "It is hedged about by some positive rules of law which the parties must heed, if they would effectuate their intent, or avoid consequences they did not intend. Muniments of title especially are guarded by positive rules of law to secure their certainty, precision, and permanency. If, in the effort to ascertain the real intent of parties, one of these rules is encountered it must control, for no positive rule of law can be lawfully violated, in the search for intent.

   \*     \*     \*     \*     \*     \*

There is one rule pertaining to the construction of deeds, as ancient, general and rigorous as any other. It is the rule that a grantor cannot destroy his own grant, however much he may modify it or load it with conditions,—the rule that, having once granted an estate in his deed, no subsequent clause, even in the same deed, can operate to nullify it. 11 Bac[on's] Abr. 665; Shep.Touch. 79, 102. We do not find that this rule has ever been disregarded or even seriously questioned, by courts."

The plaintiff contends that the subsequent clause in the Nissen deed introduced by the phrase, "all of which is *generally bounded* as follows," coupled with the description by metes and bounds of 2 separate parcels which admittedly do not include lot Q, effectively negates any intention on the part of Laura B. Chapman, to convey lot Q of the property of which Arthur A. Chapman died seized and possessed. With this contention, we disagree. In support of her position plaintiff cites Haynes v. Young, 1853, 36 Me. 557, where the land conveyed in the deed was described as "being lot in fifteen hundred acre tract (so called) No. 170, according to the survey and plan of Andrew Strong and Robert Houston, containing fifty-six acres and 135 rods, and being bounded and described as follows; viz.," followed by a description by metes and bounds which excluded a part of lot No. 170 at the southwesterly corner

thereof. Our Court there said at page 561: "The first clause in the description is lot No. 170, according to the survey and plan of Andrew Strong and Robert Houston. If this were the *only* description, *the* whole of lot No. 170, would fall within it. But the land is afterwards *more specifically described* by monuments, courses and distances. When this is done, the definite boundaries may limit the generality of a term previously used." [Emphasis supplied.]

We agree that the rule applied in *Haynes* enunciated the proper principle of law applicable in interpreting the deed before that court. The wording of the deed in *Haynes*, however, was much different from the language of the Nissen deed. In the first place, the grantor in *Haynes* did not purport to convey specifically *all* of lot No. 170, while Laura B. Chapman in the instant case particularly asserted that she was conveying *all* that real estate of which Arthur A. Chapman died seized and possessed, lying easterly and westerly of the Back Meadow Road and *lying southerly of the Egypt Road.* The Haynes court saw in the metes-and-bounds description an overriding qualification of the grant itself, and in the absence of anything to the contrary expressed in the deed concluded that the specific description was indicative of an intent to convey lot No. 170 only to the extent that said lot was particularly described in the added description. Conversely, in the Nissen deed Mrs. Chapman, by apt language, revealed that she did not intend the subsequent description by metes and bounds to be entirely precise and accurate. By the use of the phrase, "all of which is *generally* bounded as follows," she herself indicated that the additional recital was not to be viewed as definite, specific or limited in import and application. The added narration in itself demonstrates that it was not inserted to limit or restrict the previous grant. See, Moore v. Griffin, 1843, 22 Me. 350, 354. Meanings ascribed to the word "general" by Webster include amongst others: (3) "Not restrained or limited to a precise import or application;

not specific; not entering into details or minutiae; as, * * * a general outline;" (7) "Not precise or definite; approximate; as, general limits." The same Haynes court in Pike v. Munroe, 1853, 36 Me. 309, at 316, cited with approval Stukeley v. Butler, Hale, 172 for the proposition that "if I have in D, black acre, white acre and green acre, and I grant you all my lands in D, that is to say, black acre and white acre, yet green acre shall pass."

Furthermore, if we analyze the initial grant in the Nissen deed in the light of the several plots of land involved, we note that it describes 3 distincts lots, one parcel (first parcel) lying westerly of the Back Meadow Road, another (second parcel) lying easterly of the Back Meadow Road, and the third parcel lying southerly of the Egypt Road. The added general description properly describes separately by metes and bounds the first parcel lying westerly of the Back Meadow Road. In delineating the second lot, however, the second parcel lying easterly of the Back Meadow Road, the supplemental general description fails to recite all the bounds as it omits lands of Harold Chapman on the south and of Edward Thompson on the north. Thus, it becomes clear why Laura B. Chapman referred to the additional descriptive recitals as being general bounds only. They were not meant to be specific and precise. They were intended to provide a general description of the major portion of the property already conveyed, but had no reference to nor did they purport to affect the third lot, lot Q, which is the only land admittedly lying southerly of the Egypt Road of which Arthur A. Chapman died seized and possessed, and which had already been specifically conveyed.

We thus conclude that the "generally bounded" clause in the Nissen deed was intended by the grantor neither for purposes of particularization, nor to cut down the size of her previous specific grant, but rather, as indicated by the language used, was inserted to provide a general description by metes and bounds of the land lying east and west of the Back Meadow Road

which made up practically all of the lands conveyed. The omission of lot Q from the subsequent general clause was in no way indicative of an intention to destroy the previous grant.

■ Such factual finding relating to the grantor's intent respecting the Nissen deed is consistent with the rule of law of long standing in this Court that a precedent plain and specific grant is not to be impaired or destroyed by subsequent general descriptions additionally inserted as references to sources of title or under the guise of explanatory and intent-precision clauses. Hathorn v. Hinds, 1879, 69 Me. 326; Brown v. Heard, 1893, 85 Me. 294, 27 A. 182; Hobbs v. Payson, 1893, 85 Me. 498, 27 A. 519; Smith v. Sweat, 1897, 90 Me. 528, 38 A. 554. The rationale underlying the rule has been well stated by this Court in Maker v. Lazell, supra: "Titles to real estate are more certain and secure by being thus moored to an ancient and well-known rule than by being left to drift in a whirlpool of conflicting expressions of intention."

Cases involving the grant of "my homestead farm," such as Allen v. Allen, 1837, 14 Me. 387, and Stewart v. Davis, 1874, 63 Me. 539, or "all that tract or parcel of land, called and known by the name of Pitts or Beauchamp Neck," Thorndike v. Richards, 1836, 13 Me. 430, followed by qualifying specific bounds, are not in point. The term "homestead farm" or the name by which certain lands may be known have been viewed by this Court as terms of general meaning as distinguished from specific descriptions, subject to expansion or restriction as oral proof may require or as more specific delineations in the deed itself may indicate.

Summary judgment in favor of the plaintiff was error. The defendants' motion for summary judgment should have been granted.

The entry will be

Appeal sustained, with costs for the defendants.