GEORGE S. MAKER, PETITIONER, *vs.* FRANCES L. LAZELL.

Waldo. Opinion June 2, 1891.

*Deed. Repugnant Clause. Title. Construction. R. S., c. 73, § 14.*

While a grantor may modify, limit and condition his grant, he cannot destroy his grant by words in other parts of his deed of grant.

A grantor in the granting clause of his deed expressly conveyed *all* his right, title and interest in a parcel of land, and then added the following clause:

" This deed is intended to convey the title which was conveyed to me by the
deed of B," &c.  In fact no title passed to the grantor by the deed of B, but
he had a title to the parcel from another source.  *Held*; that all the title of
the grantor passed by his deed from whatever source his title was derived.

ON EXCEPTIONS.

This was a petition for partition of an island in Penobscot Bay.

The case was tried by the presiding justice, without a jury,
and he gave judgment for the plaintiff and ordered partition of
the island as prayed for.  To this decision and the exclusion of
certain evidence offered in defense, and to be found in the
opinion, the defendant excepted.

The case is stated in the opinion.

*J. H. and C. O. Montgomery*, for petitioner.

*J. P. Cilley*, for defendant.

EMERY, J.  The plaintiff by this petition for partition seeks
to have two-sevenths of Lassell Island in Penobscot Bay set off
to him in severalty.  The defendant denies the plaintiff's title.

Both parties claim under Carver and Ames, who, at the time
of their deed to the plaintiff, were the admitted owners of the
whole island in fee.  Their deed to the plaintiff was the earlier
deed, and was in the usual form of a quitclaim deed, with cove-
nants of warranty against all persons claiming under them, and
was duly executed, acknowledged and recorded.  The granting
clause and description were in the following words : "We [Carver
and Ames]  .  .  .  do hereby remise, release, bargain, sell,
and convey and forever quitclaim unto the said Maker and his
heirs and assigns forever, all our right, title and interest in and
to, two-sevenths of an Island known as Lassell Island in
Penobscot Bay. . . . . . . This deed is intended to
convey two-sevenths of the title which was conveyed to us by
deed of Edwin C. Burleigh, of said Island, and agreeably to clause
in said Burleigh's deed should the title of the State in said Island
be found not to be in the State, and the consideration money be
repaid to us, we agree to refund to said Maker two-sevenths of
the amount received back from the State, and deducting charges
and expenses of obtaining the same.  To have and to hold," &c.

The plaintiff put the foregoing deed to him in evidence and rested.

The defendant claimed title under a subsequent deed of the same island from the same grantors. The defendant then asked the court to take judicial notice that Edwin C. Burleigh, was at the time, the State Land Agent; and that his deed referred to in the deed to the plaintiff, was a deed of the State's title, if any. He then offered to show by various kinds of evidence *aliunde*, that the State had no title to convey; that no title passed to Carver and Ames by the Burleigh deed; that the State by legislative resolve had, for that reason, repaid to Carver and Ames the consideration money under that deed; and that Carver and Ames had settled with Maker for two-sevenths of the same, the latter accepting the settlement in full for his claim under their deed to him.

The presiding justice ruled that all the defendant's offered evidence was immaterial, and that, the title of Carver and Ames from other sources being admitted, their deed to the plaintiff vested in him two-sevenths of the island. Partition was ordered accordingly. To these rulings the defendant excepted.

The defendant's contention is substantially as follows: The language of the deed to the plaintiff, especially the clause beginning "this deed is intended," &c., (as before quoted,) read in the light of the attending circumstances (which they offered to show) would make it manifest that the deed was only intended to assign to the plaintiff two-sevenths of whatever title Carver and Ames acquired under the Burleigh deed,—they retaining all title they may have acquired from any other source. The offered evidence would have shown that the Burleigh deed conveyed no title and hence that the deed of Carver and Ames to the plaintiff conveyed to him none of their title. In other words, the defendant contends that all the language of the deed and the facts to be shown by his offered evidence, would have destroyed the deed as an instrument of conveyance of an interest in land, and left it with all its formalities a mere promise·to account for money.

In support of this contention, the defendant invokes the broad

proposition that, in considering written instruments, courts should always seek for the actual intent of the parties, and give effect to that intent when found, whatever the form of the instrument. The proposition has been stated perhaps as broadly as this in text books and judicial opinions, but it is not universally true. It is hedged about by some positive rules of law which the parties must heed, if they would effectuate their intent, or avoid consequences they did not intend. Muniments of title especially are guarded by positive rules of law to secure their certainty, precision, and permanency. If, in the effort to ascertain the real intent of parties, one of these rules is encountered it must control, for no positive rule of law can be lawfully violated in the search for intent.

Some of these rules prevent an intent from becoming effectual, however clearly expressed, because the language required by the rule was not used. A deed of conveyance will not ordinarily operate to convey an estate of inheritance, unless it contains the word "heirs," however clearly the grantor may have expressed that intent in other words. Some of the rules will give a deed a different effect from that which the grantor plainly expressed. The famous rule in Shelley's case is an example. In *Thong* v. *Bedford*, 4 M. & S. 362, a testator devised lands to his daughter for her life, remainder to the heirs of her body, and then explicity declared it to be his "will and meaning" that his daughter should only have an estate for life. It was held, however, by the King's Bench, per Lord Ellenborough, C. J., that the daughter nevertheless took an estate tail.

There is one rule pertaining to the construction of deeds, as ancient, general and rigorous as any other. It is the rule that a grantor cannot destroy his own grant, however much he may modify it or load it with conditions,—the rule that, having once granted an estate in his deed, no subsequent clause even in the same deed can operate to nullify it. 11 Bacon's Ab. 665. Shep. Touch. 79, 102. We do not find that this rule has ever been disregarded or even seriously questioned by courts. We find it often stated, approved, and sometimes made a rule of decision. In *Duke of Marlborough* v. *Lord Godolphin*, 2 Ves. Sr. 74,

Lord Chancellor Hardwicke, "in whose judgments equity shone resplendent," declared that the courts either of law or equity, should not adopt such a construction of an instrument of devise as would defeat the interests given. In *Cholmondeley* v. *Clinton*, 2 Jac. & Walk. 84, which was a case most elaborately argued and considered, it was said by the court that, where a limitation in a deed is perfect and complete, it cannot be controlled by intention collected from other parts of the same deed.

The rule has been recognized and acted upon in .the United States. In *Budd* v. *Brooke*, 3 Gill, 198 and *Winter* v. *Gorsuch*, 57 Md. 180, the Maryland Supreme Court, distinguished for its opinions on real estate law, declared that a grantor cannot contradict, or retract in any subsequent part of his deed a grant made in the premises. In *Ackerman* v. *Vreeland*, 14 N. J. Eq. 23, the equity court of New Jersey, recognized the rule by giving a deed of release full effect as a conveyance, although actually intended only as a partition. In *Wilder* v. *Davenport*, 58 Vt. 642, the grantor in a deed described the land conveyed by metes and bounds, and then added the clause, "Intending hereby to convey the same lands *and no other*, which passed to me by virtue of" (a certain mortgage). The court found, as matter of fact, that the parties only contemplated the land acquired by the mortgage. The metes and bounds description, however, included other land. The court held that the additional land, included in the first description, passed by the deed. In *Cutler* v. *Tufts*, 3 Pick. 272, the grantor conveyed in terms an undivided moiety, and then added words which it was afterwards claimed clearly showed that he really intended to convey an undivided fourth only. The court held that, if such was the meaning, the clause should be rejected for repugnance. In *Wilcoxson* v. *Sprague*, 51 Cal. 640, the grantor (Howard) conveyed in terms, in the granting clause of his deed, all his "right, title and estate in and to all," the tract of land described, and then next inserted the following clause, "It is expressly agreed that the interest hereby conveyed by the said Howard is that only which he acquired by conveyance from S. C. Bruce." It was found, however, that Howard had acquired no interest

by the conveyance to him from S. C. Bruce. The court held, nevertheless, that the quoted clause could not destroy the grant, and that all of Howard's interest was conveyed. In *Green Bay Co.* v. *Hewett*, 55 Wis. 96, the grantor (Martin) "released, quitclaimed, and conveyed [to the plaintiff] all his claim, right, title and interest of every name and nature legal and equitable in and to "—the described property. The deed, however, contained after the description this clause, " The interest and title intended to be conveyed by this deed is that, and that only, acquired by said Martin by virtue of a deed" from one Evarts. The deed from Evarts conveyed only half the land. It was held that this declaration of intent could not weaken the force of prior words of grant.

We think no case has arisen before in Maine, calling for the application or rejection of the rule. The court, however, has occasionally referred to the rule as an existing and binding rule. See *Pike* v. *Munroe*, 36 Maine, 316; *Bates* v. *Foster*, 59 Maine, 160; *Bodwell Co.* v. *Lane, ante,* p. 168.

This rule in no way hampers the court in seeking for the real intention of the parties, as to what, or how much land was intended to be conveyed, or as to the extent and duration of the estate intended to be created or transferred, or as to the various conditions, reservations, or exceptions in a deed. It gives full effect to all words in a deed explanatory of a grant. It refuses effect only to language destructive of the grant.

In the deed under consideration, the grantors expressly and in terms declared that they did, "remise, release, bargain, sell and convey, and forever quitclaim . . all their right, title and interest" in the land. They used words, which for centuries have been used in similar instruments to effect a conveyance of title. The words, in themselves, and by ancient association, as plainly and explicitly import an intention to convey title as any in the language. The statute, R. S., ch. 73, § 14, enacts that such words (being the usual words in a quitclaim deed), shall convey the grantor's title as effectually as any other form of words.

No question is raised as to the identity or amount of land,

as to the nature or duration of the estate, as to any condition, reservation or exception. It is contended, however, that the next paragraph, (the clause in relation to the Burleigh deed, and quoted in the statement of the case) with the circumstances offered in evidence completely nullifies the grant thus explicitly and formally made, and destroys as an instrument of conveyance the deed thus solemnly framed and executed. If such be the meaning and intention of that paragraph, if such was the purpose of its insertion in the deed, we think the rule above stated prevents our giving it any such effect, and compels us to reject it as repugnant to the grant.

If it be true that the grantors, in spite of their explicit words, did not in fact intend their instrument to operate as a grant; the remedy, if any, is on the equity side of the court by way of a cancellation, or reformation of the instrument. So long as the deed remains in its present form, uncancelled, it must stand as a muniment of title in the plaintiff, his heirs and assigns. Titles to real estate are more certain and secure by being thus moored to an ancient and well known rule, than by being left to drift in a whirlpool of conflicting expressions of intention.

*Exceptions overruled.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and FOSTER, JJ., concurred.