## SMITH v. WILLIAMS et al.

### Sac. No. 147; December 16, 1898.

#### 55 Pac. 600.

Water Rights.—A Deed by a Prior Appropriator of Water conveyed "all of his right to the use of all the waters of D. creek. Said waters to be taken out at a point . . . . about one mile above the head of S.'s old ditch, and tapping said creek where the B. Co. taps said D. creek. . . . . To have and to hold . . . . the first right to the use of all the waters" thereof. The grantor at that time owned five ditches tapping the stream below the named point of inflow, through

13

which ditches he thereafter continued to divert water, with the grantee's acquiescence. Considerable water still flowed in the stream below the point named, it being from seepage, springs and other sources. Held, that the intention was to convey a first right only to the point mentioned, and, hence, that the waters below did not become subject to appropriation.

Witness.—It is not Error to Exclude a Question Calling for a mere repetition of testimony.

APPEAL from Superior Court, Siskiyou County.

Action by William H. Smith against William Williams and Jacob Templey. From a judgment for plaintiff and an order denying a new trial defendant Templey appeals. Affirmed.

Warren & Taylor and T. M. Osmont for appellant; James F. Farraher for respondent.

VAN FLEET, J.—Appeal by defendant Templey from the judgment, and an order denying a new trial. The action was to enjoin defendants from diverting water from a small stream in Siskiyou county, known as "Ditch Creek," and for damages for such diversion. Plaintiff's claim was the exclusive right by prior appropriation to the waters of the stream, to the extent of six hundred inches, measured under a four-inch pressure, "when there is that quantity therein; and, when there is not such quantity, then all of the waters" of the stream "which rise or flow therein or thereinto between the point where the present ditch of the Blue Gravel Mining Company taps said creek, and a point about two miles below, on the line of said creek, where the present lower ditch of plaintiff taps said creek." He averred a wrongful diversion by defendants of fifty inches of the water at a time when there was less water in the stream than the maximum quantity to which he was entitled, to his damage in the sum of $350. Defendant Templey set up the right in himself by appropriation to "about twenty inches" of the water of the stream, and denied the diversion of any water belonging to the plaintiff, or any damage. The court found that plaintiff was entitled to the exclusive use of the waters of the stream, to the extent of five hundred inches; that defendant Templey, in June, 1893, forcibly took possession of one of plaintiff's ditches and diverted through the same about fifty inches of water, and continued such diversion up to October, and again

in like manner diverting it from May to October, 1894; that during the periods of such diversion there was less than five hundred inches of water in the stream; that plaintiff was damaged in the sum of $250. Judgment was entered enjoining the diversion, and for the damages found.

The main point urged is that the findings are not sustained by the evidence. There is evidence tending substantially to establish the facts as found by the court. The finding that plaintiff "is now, and for upward of twenty years last past has been the owner and entitled to the exclusive use to the extent of five hundred inches, measured under a four-inch pressure, when there is that quantity, and when there is not such quantity, then to all of the waters flowing in Ditch creek, in Cottonwood mining district, county of Siskiyou, state of California, which rise or flow therein between the point where the present ditch of the Blue Gravel Mining Company taps said Ditch creek, and a point about two miles below, on the line of said creek, where the present lower ditch of plaintiff taps said creek," presents the principal point of attack. It is contended that the finding is wholly negatived by the fact, as claimed by appellant, that prior to the bringing of the action plaintiff had conveyed away all his rights and interest in the waters of Ditch creek. This claim is based upon the fact that in December, 1888, plaintiff made a deed to one McFarland, whereby he conveyed to the latter "all of his right to the use of all the waters of Ditch creek. Said waters to be taken out at a point in said creek about one mile above the head of William H. Smith's old ditch, and tapping said creek where the Blue Gravel Mining Company's ditch taps said Ditch creek." "To have and to hold, all and singular, the first right to the use of all the waters of said creek." We think this deed was correctly construed by the court below as conveying only plaintiff's rights to the quantity of water mentioned, taken out at the designated point, and as leaving unaffected in plaintiff his rights in the stream below that point. This intention is evident, not only from the language of the instrument, but by the practical construction put upon it by the parties to the deed. Plaintiff at the date of the conveyance owned some five ditches tapping the stream at points below the point of diversion specified in the deed to McFarland, through which he has since continued to divert waters from said creek with-

out interference or adverse claim from his grantee, but with his knowledge and acquiescence. Plaintiff's grantee has taken the water from the stream by means of the same dam which existed in the stream at the point of his diversion when the deed was made; and there has since continued to flow below said dam a considerable quantity of water, part of which escapes past said dam, and part by seepage from the Blue Gravel Company's ditch, and part of which comes into the streams from springs and other sources below said dam; and plaintiff's right to the use of this water has never been questioned by his grantee, nor by anyone else other than appellant. The claim of the latter was based upon the theory that plaintiff had parted with all his rights in the stream; that all the water that flowed below the point of diversion made by plaintiff's grantee was seepage water, which was unappropriated, and which appellant was therefore entitled to take. The court properly found against this claim.

The other points call for no particular notice. There was no material error in sustaining plaintiff's objection to the question asked him as to the damage done him. It had been clearly answered once, and could not be made stronger by repetition. Judgment and order affirmed.

We concur: Harrison, J.; McFarland, J.; Garoutte, J.

I dissent: Beatty, C. J.

TEMPLE, J.—I dissent. Plaintiff claims exclusive right by appropriation to six hundred inches of water, or, when there is not that quantity, then to all the water in the creek, between two designated points on the creek. He avers that he now is, and for twenty years last past has been, the owner of, and entitled to the exclusive use of, said water. He charges that defendants forcibly took possession of one of his ditches June 15, 1893, and diverted, and continue to divert, fifty inches of water, to his damage in the sum of $300, and that they threaten to continue such diversion. Templey denied all the material allegations of the complaint, and set up a right in himself, by appropriation, to twenty inches of water, "being seepage water from a ditch taking all the waters of Ditch creek, in Cottonwood mining district, and extending from Ditch Creek to the 'Blue Gravel Mining Claim,' so called." Plaintiff testified at the trial that he

owned five ditches by which water was taken from Ditch creek, and in 1878 he put upon record a notice describing his several claims to water. He also testified to the use of water from these various ditches down to the year 1892. In the notice, posted and recorded in 1878, he says: "Take notice that I own three ditches now taking waters of Ditch creek, a tributary of Cottonwood creek, and upon which this notice is posted,—one of them called the 'Crawford Ditch,' one the 'Haserick Ditch,' and the other constructed by me in 1870 to turn waters from this creek to the Steve Oysler ditch; and I claim the first right to the waters of this creek for said ditches to the full capacity, which ordinarily is all of the waters of this creek. I now claim surplus water in high waters, after said ditches are supplied, and the waters below said ditches, to the extent of five hundred inches, under a four-inch pressure," etc. There was no evidence tending to prove any later appropriation by plaintiff. The court found "that plaintiff above named is now, and for twenty years last past has been, the owner, and entitled to the exclusive use, to the extent of five hundred inches, measured under a four-inch pressure, when there is that quantity, and, when there is not such quantity, then to all the water flowing in Ditch creek," etc. In 1888 the plaintiff made a conveyance to one McFarland, in which it is recited that in consideration of the sum of $6,000, and other considerations, the party of the first part "does by these presents bargain, sell, convey and confirm unto said party of the second part, and to his heirs and assigns, forever, all of his right to the use of all of the waters of Ditch creek. Said waters to be taken out at a point on said creek about one mile above the head of the Wm. H. Smith's old ditch, and tapping said creek where the Blue Gravel Mining Company's ditch taps said Ditch creek, in the Cottonwood mining district, county of Siskiyou, state of California. To have and to hold all and singular, the first right to the use of all of the waters of said creek, together with all rights appurtenant thereto," etc. The appellant contends that by this deed plaintiff parted with all his right to the waters of Ditch creek, and as there was no evidence tending to show that plaintiff had, by appropriation or otherwise, subsequently acquired any water rights in the stream, and, furthermore, as the court expressly based its finding in favor of plaintiff upon rights which had belonged to plain-

tiff for twenty years, the finding is wholly without support from the evidence. It seems that there was already a dam at the point indicated, and that the Blue Gravel miners were taking water for these mines. The deed was for the owners of that mine, or some of them; and it is argued that the deed was merely intended to settle and assure their right to take all the water at that point, and for their mine. A contrary intent is indicated in the deed, which provides that the grantee shall not sell water for one particular purpose. Whether this attempted limitation be valid or not, it shows that the use of the water was not to be confined to working the mine. That the deed conveys all the rights of the grantor is so plainly expressed that construction is neither called for nor proper. It is twice expressed without quali- fication: "All of his right to the use of all the waters of Ditch creek," and "the first right to the use of all the waters of said creek, with all rights appurtenant thereto." There being a clear grant of the water and water rights, a condition which would prevent the grantee from the full enjoyment of the estate granted would be void as repugnant; also, un- der section 1070 of the Civil Code: Wilcoxson v. Sprague, 51 Cal. 640; McLennan v. McDonnell, 78 Cal. 273, 20 Pac. 566; Dodge v. Walley, 22 Cal. 225, 83 Am. Dec. 61. The case of Maker v. Lazell, 83 Me. 562, 23 Am. St. Rep. 795, 22 Atl. 474, is a very instructive case on this subject. The cases are collated and reviewed, and the objection that the rule will sometimes defeat the intention plainly manifested is answered.

I think, however, that this language in the deed cannot be regarded as a limitation or as a condition. As to limitations and conditions, the language of a deed must be construed strictly against the grantor. It is otherwise as to a reser- vation: Civ. Code, sec. 1069. By a reservation the grantor reserves to himself some right or property which did not be- fore exist, such as rents and easements. An exception with- draws from the operation of the deed some part of the subject matter of the conveyance. However construed or un- derstood, the statement that water is to be taken out at a certain point cannot be a reservation. And it is equally plain that it is not an exception. It is claimed that it must be construed as a grant only of such water as could be diverted at the point mentioned. Such conclusion is against the obvious and unambiguous language of the deed. All of plaintiff's appro-

priation of water was from points below the Jillson's or Blue Gravel dam. He testified, and, indeed, the very reason of the contention is, that a great deal of water percolated into the stream below the dam. This water, so far as included in his appropriations, certainly passed by his deed. But he cannot sell the right to take water from the stream at a point above his appropriation, and still maintain, as against other appropriators, his water rights below. If he had not authorized the diversion, there might have been water enough for all. And, if the water diverted does not come out of his water right, how could he sell it? Again, Smith did not own the stream, or its bed or banks. It does not appear that he was a riparian proprietor on the stream. He had no power to fix the point of diversion, nor any apparent interest in the question. The grantee acquired title to the water from him, but could not also acquire a right to build a dam at any point. I think the finding in favor of the plaintiff's right to the water unsupported by the evidence.

The plaintiff, in his complaint, charged that the defendants forcibly and against his consent took possession of a ditch belonging to plaintiff, and through it diverted from Ditch creek fifty inches of water which belonged to the plaintiff. Appellant denied plaintiff's right to any water, and also his ownership to the ditch, and that he at any time diverted any water whatever from the creek, except what seeped through the dam and from the Jillson ditch, and averred that he claimed by appropriation twenty inches of water, all of which was seepage water from the Jillson ditch, but was not taken by him from Ditch creek. Jillson, as well as Templey and Williams, testified upon this point favorably to defendant. The court, however, found this issue, also, for the plaintiff. I can find no direct evidence in the record to the effect that appellant ever took any water from Ditch creek except as above stated.

Templey and his witnesses testified that he had dug a ditch below the Jillson ditch, and that all the water he took came by percolation from that ditch. Upon this it is contended that, upon the construction of the deed claimed by plaintiff, this was water which had been taken out of the stream at the point mentioned, and, therefore, water which he had sold. This would present the question whether an appropriator can prevent other parties from taking from the stream water

which, left undisturbed, would percolate into the stream, and help to furnish the quantity to which he had acquired a right by appropriation. As this case now stands, it is not necessary to determine what the respective rights of the parties would be under such circumstances. It may possibly not be material upon a new trial, and, as it is an important question, which is involved in several other cases, I think it better that it should be passed for the present. I think the judgment and order should be reversed.

I concur: Henshaw, J.