GOING HATHORN *vs.* CROSBY HINDS, executor.

Somerset.    Opinion April 16, 1879.

*Deed.    Warranty.    Breach.    Description.    Construction.*

A and other grantors conveyed to B a parcel of land described thus:
"Beginning at the north-west corner of lot number six; thence easterly on
the line to the north-east corner of said lot, thence southerly on the east
line of said lot to the south-east corner of said lot; thence westerly on the
south line of said lot to land formerly owned by John Dutton; thence north
on the west line of said lot to the first mentioned bounds; being the same
lot of land conveyed to us by Jeremiah Bragg and formerly in possession of
Warren Spearin, to contain one hundred acres more or less."  Lot five
adjoins lot six and is immediately west of it; each containing one hundred
acres.  John Dutton once owned the west and not the east half of lot five,
but the parties to the conveyance had reason to suppose he had owned the
east half, as he had previously conveyed it to one of the grantors.  Jere-
miah Bragg had conveyed to one of the grantors the west half of lot six and
the east half of lot five.  Warren Spearin occupied upon six and not upon
five: *Held,* that the description in the deed from A and others to B cov-
ered lot six and no more.

ON EXCEPTIONS.

Going Hathorn having claimed against the estate of David
Hunter, the defendant's testate, one hundred and fifty dollars and
interest for breach of warranty in a deed given by said Hunter,
October 11, 1851, to him, by reason of a portion of the land so
deeded having been by him sold to some other person, a statute
reference was executed between the plaintiff and defendant.  A
hearing was duly had before the referee (Solyman Heath, Esq.)
who, on request, made an alternative award, submitting the ques-
tions of law arising on the facts found by him to the determina-
tion of the court.  His report is as follows :

"The defendant's testator sold and conveyed to said Hathorn
by deed of warranty, on October 11, 1851, lots No. 4 and 5 of
100 acres each, in 5th Range in Pittsfield, and the only question
arising is, whether at the time of said conveyance, the said testa-
tor was seized of the east half of said lot No. 5.  The description
in said deed was, ' Beginning at the north-west corner of lot No.
4 on the town line betwixt Pittsfield and Hartland, thence on said
line easterly the width of the two lots No. 4 and 5 to land for-

merly owned by David and James Hunter and occupied by War-
ren Spearin, thence southerly on said Hunter's line to the south-
east corner of lot No. 5, thence westerly across said lots No. 4 and
5 to land owned by the heirs of the late Levi Prince, thence
northerly by said Prince's land to the first mentioned bound, being
the same land formerly owned by the late John Dutton of Vas-
salboro', containing two hundred acres more or less.'

Said Dutton sold and conveyed the same lot by warranty deed
to the testator, February 28, 1845, by the same description, but
concluding thus : ' Being same I bought of Gardiner & Bowman,
and to be the same where John Hunnewell now lives, containing
two hundred acres more or less.'    John Hunnewell lived on the
eastern half of lot No. 5.

I also find by copies of deeds produced that Bowman con-
veyed to John Dutton, Jona. Dutton and Ezekiel Small in July,
1835, part of lot 4 in 5 Range, and part of lot 4 in 4 Range, and
that Gardiner conveyed to said Dutton & Small in August, 1835,
the west half of lot No. 5, and the remaining part of lot No. 4 in
5 Range, not conveyed to Bowman, and part of lots 4 and 5 in 4
Range, being contiguous lots.

I also find that the testator had a conveyance by warranty deed
in 1834, from one Bragg, of the east half of lot No. 5 and west
half of lot No. 6 in 5 Range.

I also find that the testator, with others, on January 24, 1849,
conveyed by a deed of quitclaim to one Francis Spearin, the land
described as follows :

'A tract of land in Pittsfield in said county of Somerset,
beginning at the north-west corner of lot No. 6 in Pittsfield,
thence running easterly on said town line to the north-east corner
of said lot; thence southerly on the east line of said lot to the
south-east corner of said lot; thence westerly on the south line of
said lot to land formerly owned by John Dutton; thence north on
the west line of said lot to the first mentioned bounds, being the
same lot of land conveyed to us by Jeremiah Bragg, and formerly
in possession of Warren Spearin, to contain one hundred acres
more or less.'

No question was made at the hearing that the testator at the

time of his conveyance to Hathorn of lots No. 4 and 5 was not the owner of said lots, unless the deed given by him to Spearin in 1849 conveyed the east half of lot No. 5 ; and I find that he was the owner unless the court holds that the legal construction of the deed aforesaid, and any other facts by me found in this case, should forbid it.

Now if the court shall determine upon the facts found by me, and the legal construction of the deed aforesaid, that the testator was not seized of the easterly half of lot No. 5 in 5 Range at the time of his conveyance to Hathorn, then I award that said Hathorn recover against the estate of said testator in the hands of Crosby Hinds, his executor, the sum of three hundred and sixty-six dollars damages, and costs of reference taxed at thirty-one dollars and fifty cents, and costs of court to be taxed by the court. But if the court should be of the opinion that the testator conveyed to Hathorn a good title of the easterly half of lot No. 5 in 5 Range, and was seized thereof at the time of said conveyance, then I award that Crosby Hinds, as such executor, recover against said Hathorn costs of reference taxed at thirty-one dollars and fifty cents and costs of court to be taxed by the court.

I annex a sketch of the several lots."

Town Line—NORTH.

Judgment *pro forma* was entered by the Justice presiding, upon the report of the referee, and the plaintiff alleged exceptions.

*D. D. Stewart,* for the plaintiff, contended :

That Dutton never owned, and never had any pretense of title to east half of lot five; that Hunter acquired from Bragg title to east half of five and west half of six, and conveyed the tract thus acquired to Spearin, erroneously describing it as six, when in fact he never owned the east half of six. He only intended to convey what he owned, and there is enough in the deed to correct the mistake.

Any boundary, or any part of the description of the premises mentioned in a deed, may be rejected, " when it is clear from all the circumstances of the case that it was erroneously inserted." *Bosworth* v. *Sturtevant*, 2 Cush. 393. *Forbes* v. *Hall*, 51 Maine, 570. *Wing* v. *Burgiss*, 13 Maine, 111. *Jones* v. *Buck*, 54 Maine, 301. *Chesley* v. *Holmes*, 40 Maine, 536. *Abbott* v. *Pike*, 33 Maine, 204–6–7.

As Spearin holds east half of five by deed, January 24, 1849, the deed of the same half, two years later (October 11, 1851,) to plaintiff, conveyed no title against Spearin, and the covenant of warranty is broken, and plaintiff is entitled to recover.

*C. Hinds*, for the defendant.

PETERS, J. The intention of the parties has been called the polar star in the construction of writings. This rule controls all others. Of course it must be such an intention as is effectually expressed in the writing. Then there are certain rules or guides that are considered valuable to aid in getting at the intention. Among them are these: Erroneous or defective references to the sources of title are not to vary a prior description clearly and definitely given. *Crosby* v. *Bradbury*, 20 Maine, 61. A precedent particular description is not to be impaired by a subsequent general description or reference. *Melvin* v. *Proprietors*, &c., 5 Metc. 15, 29. Parties are supposed to rely more on a first description, than on an attempted re-description, other things equal. A reference is more important where the description is imperfect without the reference, and where the description is aided rather than controlled by it. *Weller* v. *Barber*, 110 Mass. 44, 47. Definite boundaries subsequently used will limit the generality of a term previously used, nothing else controlling. *Haynes* v. *Young*, 36 Maine, 557. *Stewart* v. *Davis*, 63 Maine, 537, and cases there

cited. *Whiting* v. *Dewey*, 15 Pick. 428, 434. If the particular description by metes and bounds be uncertain and impossible, the general description governs. *Savage* v. *Kendall*, 10 Cush. 241. When there are several descriptions in a deed, such a construction will be given as will, if possible, satisfy each. *Law* v. *Hemstead*, 10 Conn. 23. *Madden* v. *Tucker*, 46 Maine, 367. References to the origin and sources of title are often inconsiderately inserted as additional description in deeds. Applying to this case the rules and tests before named, we think the result must be favorable to the award of the referee in favor of the defendant.

The deed in question describes the land conveyed as " a tract of land in Pittsfield in said county of Somerset, beginning at the north-west corner of lot number six in Pittsfield, thence running easterly on said town line to the north-east corner of said lot; thence southerly on the east line of said lot to the south-east corner of said lot; thence westerly on the south line of said lot to land formerly owned by John Dutton; thence north on the west line of said lot to the first mentioned bounds, being the same lot of land conveyed to us by Jeremiah Bragg, and formerly in possession of Warren Spearin, to contain one hundred acres more or less."

The plaintiff's position is, that this description includes the east half of lot number five, which lot adjoins lot number six and is immediately west of it. He contends that John Dutton did not own lot number five, but that he owned the westerly half of it only, and that the call in the deed " to land formerly owned by John Dutton " must extend, not to the south-east corner of lot five, but to the middle of the southerly line thereof. This deed was made in 1849. The case discloses the fact that one of the grantors received a deed of warranty from John Dutton in 1845 of lots four and five, and that he conveyed the same lots to the plaintiff in 1851. It may well have been supposed by the parties that John Dutton formerly owned the whole of lot five, whether he did in fact own it or not. But the case does not show that he did not own it, and at most throws perhaps some doubt upon that question. It seems that, when John Dutton conveyed the lots four and five in 1845, by a full and definite descrip-

tion, he added these words : " Being same I bought of Gardiner and Bowman." The referee reports that copies of deeds were produced before him showing that Bowman conveyed to John Dutton, Jonathan Dutton and Ezekiel Small a part of lot four, and that Gardiner conveyed to Dutton and Small the balance of lot four and the west half of lot number five. These conveyances would not carry the east half of number five into John Dutton or his partners. But they do not render it at all improbable that there were other conveyances to John Dutton. Certainly Gardiner and Bowman did not convey to John Dutton alone, but to him and others. But other words of reference were added by John Dutton in his deed in 1845 : " To be the same where John Hunnewell now lives." And the fact is found that John Hunnewell lived on the eastern half of lot number five, so that the references are inconsistent with each other. To add to the confusion of the title, it also appears in the facts reported that the testator, the party defendant and grantee of John Dutton and grantor in the deed now under discussion, had a conveyance in 1834, before the deed from Dutton, from one Bragg of the east half of lot five and the west half of six; and this fact the plaintiff relies on. But notwithstanding the testator received such conveyance from Bragg in 1834, in 1851, when he conveyed lots four and five to the plaintiff, he again asserts at the close of his description that the same lots were formerly owned by John Dutton. It would seem that a more exhaustive examination of the earlier title of the lot in question and its adjuncts, might have presented the case to us more clearly. Still, we are inclined to think that, if the third line goes to the middle of lot number five, it would have to be rejected as false demonstration, because it would be inconsistent with the fourth boundary and the starting point in the description. There is too much other evidence that lot six only was to be conveyed, to be overcome by it.

The plaintiff, secondly, relies upon a further part of the description to prove that the parties to the deed of 1849 intended to include the easterly half of lot number five. The grantors say, " being the same lot of land conveyed to us by Jeremiah Bragg." Here the before named rules of construction have a more direct

application. The reference is general, while the description is particular. It gives no date of deed nor its record. There is no declaration that the conveyance from Bragg was to be resorted to for the purpose of fixing boundaries or to make the description more certain and particular. It is merely the recital of a supposed source of title. The reference is defective and erroneous in several respects. Bragg did not convey to the grantors, but only to one of them. Bragg's deed does not cover the east half of lot six, while the deed to be construed does. The two descriptions cannot be so reconciled as to stand together. The reference does not aid but alters the prior description. Still the main description needs no assistance to make it certain. There is no suggestion that the boundaries of lot six are not fixed and well known. The force of this reference is broken by the still further reference, "formerly in possession of Warren Spearin." It would seem a fair inference from the deed to the plaintiff that Warren Spearin lived on lot six. Another inference from all the deeds is, that each lot was supposed to contain one hundred acres. The deed in question purports to convey that number. Lot six gives that number. If the deed in question goes into lot five, the grantee got more. While the plan shows that the defendant's testator did not own the south-east quarter of six, it does show that he owned the north-east quarter. While the case may not be free of all difficulty, we are induced to believe that the facts presented require us to adhere to the result pronounced by the referee.

*Exceptions overruled.*

APPLETON, C. J., DANFORTH, VIRGIN and LIBBEY, JJ., concurred.