NEWELL G. HARDISON *vs.* EARL K. JORDAN.

Hancock.    Opinion, December 21, 1945.

*Blaisdell & Blaisdell,* for the plaintiff.

*Clarke & Silsby,* for the defendant.

SITTING: STURGIS, C. J., THAXTER, MANSER, MURCHIE, JJ. AND CHAPMAN, ACTIVE RETIRED JUSTICE.

STURGIS, C. J.   In this action of trover the plaintiff seeks to recover damages for the conversion of blueberries growing upon land which he claims to own in Waltham, in Hancock County, Maine. The defendant having pleaded title to the land and possession in himself, after an adverse verdict, filed exceptions and a general motion for a new trial.

The parties to this action, owning adjoining lots, are in dispute as to the location of the dividing line between their properties and the ownership of a strip of land about five rods wide and one hundred and sixty rods long in which the line is located. In the season of 1943 the defendant picked fifty bushels of blueberries on this land and appropriated them to his own use but except that it was in the southerly end of the strip it is not made to appear just where this was done. The verdict was general and for the full value of the blueberries as alleged in the writ.

*Motion.*

The record shows that the plaintiff Newell G. Hardison on July 3, 1926 received conveyance by warranty deed from Everett Mace of the following described parcel of land:

"Beginning at the County road leading from Waltham to Aurora, thence northerly seventy four (74) rods to lot No. 34; thence easterly seventy six (76) rods to lot No. 14, deeded to Twynham and Mercer; thence southerly one hundred and sixty (160) rods to land of Gilman Jordan estate, or lot No. 10; thence westerly seventy six (76) rods to land formerly of Daniel Wooster, now of Hollis D. Jordan; thence northerly seventy six (76) rods; thence westerly four (4) rods; thence northerly ten (10) rods; thence easterly four (4) rods to the place of beginning, and containing seventy six (76) acres, more or less. Excepting and reserving however, a strip of land on the south side of said lot of about ten acres, deeded to Arville S. Jordan by Isaac Jenkins."

Thereafter on February 11, 1932 he acquired title by deed from Oscar T. Jordan, administrator of estate of Arville S. Jordan of the ten-acre lot excepted from his deed from Everett Mace, as above recited, and containing the following description:

"Beginning at the south west corner of the William Mercer lot, formerly, and thence north on said Mercer lot west line, twenty three (23) rods; thence westerly so as to hit a stone wall, and thence by said wall to the east line of lot formerly owned by Daniel Wooster; thence southerly in said Wooster lot east line, twenty three (23) rods to land formerly of Isaiah Kingman; thence easterly on the north line of said Kingman lot to the place of beginning, and containing ten acres, more or less."

Such title as the plaintiff has in the strip of land in controversy is derived from these deeds. And he relies upon this title to prove possession or right of immediate possession to the blue-

berry crop which the defendant picked and carried away. If he had title he was constructively in possession in the absence of proof to the contrary and may maintain trover for the severance. *Stevens* v. *Gordon,* 87 Me., 564, 33 A., 27.

In Newell G. Hardison's deed from Everett Mace of the lot of land first above described the southerly bound is given as "thence westerly seventy six (76) rods to land formerly of Daniel Wooster, now of Hollis D. Jordan" and in his deed from Oscar T. Jordan, Administrator, conveying the ten-acre lot the corresponding bound is given as "thence by said wall to Daniel Woosters East line." It being conceded that the land formerly of Daniel Wooster and later of Hollis D. Jordan is now owned by the defendant Earl K. Jordan and it and its East line answers these calls the acceptance of deeds containing these bounds establishes that land or its East line as a controlling monument. *McCausland* v. *York,* 133 Me., 115, 174 A., 383; *Perkins* v. *Jacobs,* 124 Me., 347, 129 A., 4. The true line of the land is the boundary. *Ayer* v. *Harris,* 125 Me., 249; 132 A., 742; *Murray* v. *Munsey,* 120 Me., 148, 113 A., 36. And to this monument if it can be located distances must yield. *Bryant* v. *Maine Central Railroad Company,* 79 Me., 312, 9 A., 736; *Ames* v. *Hilton,* 70 Me., 36.

As the title has come down through mesne conveyances for three-quarters of a century without substantial variation in the description or material changes in the locus or its surroundings it is not difficult to locate the East line of the defendant Earl K. Jordan's land. It was conveyed to him by Sadie and Theron Haslam by their deed of November 12, 1941, containing the following description:

"Beginning on the county road leading to Mariaville and thence East on line of land formerly of Isaiah Kingman thirty-eight rods; thence North seventy-six rods to house lot bargained to David Fox; thence West four rods; thence North ten rods to the Aurora road; thence

East four rods; thence North seventy-four rods; thence West forty-five rods; more or less to the county road aforesaid; thence South one hundred and sixty rods to place of beginnig and containing forty acres more or less."

There are no facts in evidence which limit the controlling effect of this description. The county road leading to Mariaville, at the point where the south bound of the defendant's land begins, although widened at some time, appears to be practically where it was when he and his predecessors received their deeds, and the location of the south bound itself, which is the land formerly of Isaiah Kingman, is known and admitted. Under the calls of the defendants' deed the southerly end of the East line of his land is at a point in the line of land formerly of Isaiah Kingman thirty-eight rods east of the center of the county road leading to Mariaville, and thence the line extends North at a right angle, with a jog here not of concern, one hundred and sixty rods more or less. That the first or southerly bound of the defendant's land which fixes the location of his East line begins at the center of the Mariaville road permits of no doubt, for when there is nothing as here to indicate a different intention, the point of beginning of a boundary being on a road must be taken as in the center of the way. *Cyr* v. *Dufour*, 68 Me., 492.

The parties in this case have both fallen into error as to the location of the dividing line between their adjoining properties in the main through a disregard of the controlling effect of the descriptions in their deeds. Although an engineer, taking the stand as his witness, knows and fixes on the face of the earth the location of the line thirty-eight rods from the center of the Mariaville road which, as stated, on this record is the East line of the defendant's land, formerly of Daniel Wooster, to which by the express provisions of his deeds Newell G. Hardison's land runs on the West, he relies on and claims under a survey

made by the engineer which extends his land thirty-six feet westerly and beyond his adjoiner's boundary line. This results from not allowing distance to yield to the stated monument in the fifth call of the plaintiff's deed from Everett Mace of July 3, 1926 which is "thence westerly seventy six (76) rods to land formerly of Daniel Wooster, now of Hollis D. Jordan" and it has no justification in the record. If the plaintiff or his predecessors in title in years gone by have used or occupied any part of the surveyed overrun upon the land of the defendant their acts appear to have been only occasional and fugitive in nature and do not prove title by adverse possession. *Webber* v. *McAvoy*, 117 Me., 326, 164 A., 513. Not amounting to disseisin occupation cannot control the express language of the deeds and change the location of the true line. *Wiswell* v. *Marston*, 54 Me., 270. Nor can a conventional line agreed upon by the adjoiners. *White* v. *Jones*, 67 Me., 20. As this case is presented the plaintiff Newell G. Hardison does not own the overrun of thirty-six feet which he has made in his West boundary and has no right to recover for any blueberries the defendant picked in that part of the strip of land in controversy.

The defendant Earl K. Jordan has even greater disregard for the true East line of his property. Enlisting the services of a forestry engineer he starts, not at the center of the county road leading to Mariaville where the first call in his deed begins, but at a ditch lying somewhere on the easterly side of the way and thence, ignoring the distance of thirty-eight rods there expressly given, runs his line to the middle of a pile of rocks or old wall and the remains of a fence which lie thirty-eight rods and forty-six feet from the center of the road and there turning a right angle projects his East line to the North, and with discrepancies which in this case are not important, closes his description to the point where he began. Who built this wall or fence at which the defendant attempts to establish his East line or when or for what purposes it was erected is not made to appear nor is more than occasional occupation to it on

the one side or the other not amounting to disseisin disclosed. The adjoining tracts of the parties to this action were formerly the property of a common owner and it is possible that he built the wall and fence for his own convenience and purposes and without regard to the location of the dividing line..Be that as it may in his later conveyances, which are in the chain of title, this common owner did not mention either the wall or the fence but made the East line of the defendant's land the West bound of that conveyed to the plaintiff's predecessor in title and that description has been continued in all subsequent deeds. No.controlling significance can be attached to the existence of. the wall and the fence or their location. For purposes of this case the defendant shows title only to the East line of his property as described in his deed which lies thirty-eight rods from the center of the county road leading to Mariaville, and includes the overrun of thirty-six feet which the plaintiff has made in his survey but not his own overrun of forty-six feet into the plaintiff's land.

The strip of land in controversy from which the blueberries in suit were taken is made up of the overruns of the dividing line between the lands of the parties which have been pointed out but whether the picking took place on the one or the other or if on both in what proportions the evidence does not show and no means of calculation is at hand. Relying on title, the plaintiff was entitled to recover only to the extent he proved title. *Amey* v. *Lumber Company*, 128 Me., 472, 148 A., 687. It appearing that the verdict below allowed a recovery for blueberries picked throughout the land in dispute and in part on that owned by the defendant a new trial must be granted.

*Exceptions.*

In the chain of title of the plaintiff to the land which he has proved he owned in more than one instance mortgage foreclosures were effected through notices signed by the mortgagee "By Lynwood F. Giles his attorney" or the equivalent, but the

record is clear that the mortgagees afterwards recognized and adopted the acts of the attorney, claimed rights thereunder and assigned the mortgages, with all the rights and benefits of foreclosure, to their successors in title. This established *prima facie* the authority of the attorney to act and it not being impeached or qualified it must be taken as proved. *Smith v. Larrabee,* 58 Me., 361. The defendant's exceptions to the rulings that these mortgage foreclosures were sufficient cannot be sustained.

*Motion sustained.*
*New trial granted.*
*Exceptions overruled.*