CHARLES L. BURGESS
*vs.*
SAMUEL SMALL

Sagadahoc.   Opinion, October 19, 1955.

*John P. Carey*, for plaintiff.

*A. Alan Grossman*, for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, CLARKE, JJ.

WEBBER, J.   This was an action in trover based upon the alleged conversion by the defendant of seven head of the plaintiff's cattle. At the close of the plaintiff's case the presiding justice ordered nonsuit and exceptions thereto raised the only issue here presented. The evidence, viewed in the light most favorable to the plaintiff, discloses that he was the owner of twenty-nine head of cattle; that he operated a store and entrusted the management of his herd to one Perry, his agent, who was deceased prior to the time of trial; that plaintiff was relatively unfamiliar with the par-

ticular cattle in the herd and had seen them only once when they were in the barn of one Hawkes; that he was personally unable to identify individual cattle in the herd; that his agent, Perry, had authority to buy, sell and trade cattle for him and customarily reported these transactions after they were completed; that in May, 1953, with plaintiff's authorization, Perry was keeping the herd in the barn of one Hawkes, where they had been during much of the winter; that during the latter part of May a part of the herd was removed from the Hawkes barn; that both the plaintiff and Hawkes assumed that the cattle were removed by one Elwell, although no witness was present; that Elwell came to the Hawkes barn with a truck and he and Hawkes loaded the remainder and they were removed by Elwell; that Hawkes was able to give a rather general description of part but not all of the individual cattle; that plaintiff authorized his agent, Perry, to pasture his herd on the Elwell farm for a cash consideration and one milch cow; that no witness saw the cattle on the Elwell place; that efforts made by the plaintiff and the Sheriff to locate Elwell prior to trial had failed; that some time in July the plaintiff learned that his cattle were missing; that in July the defendant, who, in the course of his business, buys and slaughters cattle, purchased seven head of cattle from Elwell; that some time thereafter the plaintiff had a telephone conversation with a person whom he assumed to be the defendant, in which the plaintiff asked if cattle had been purchased from Elwell, and was told that they had; that plaintiff was further told that what had been purchased was "a pair of steers and four Holstein heifers and a Guernsey heifer," which had been slaughtered; that the plaintiff and his agent furnished to the Sheriff a list of twenty cattle which were missing which included eight Holstein heifers, four steers and seven Guernsey heifers; that when the Sheriff showed this list to the defendant, the defendant stated that the cattle he purchased from Elwell corresponded with the list "in more or less a general

way." A great deal of hearsay testimony was injected into the case which cannot be accorded any probative force in this analysis of the sufficiency of the plaintiff's evidence. It is apparent that in the absence of Elwell and Perry, no direct evidence could be adduced which would follow individual cattle owned by the plaintiff through the chain, step by step, into the hands of the defendant. Neither were the identifying descriptions sufficiently definite and certain to distinguish the cattle purchased by the defendant from Elwell from other cattle answering the same general description so as to make it clear that the cattle purchased in fact came from the plaintiff's herd. The plaintiff cannot prevail if his case rests upon mere surmise and conjecture. He may prevail upon circumstantial evidence alone if there are no fatal weaknesses in the chain of that evidence.

The degree of particularity with which identification must be made in proof of a conversion in a trover action will vary with the circumstances of the case. Where, as here, there is opportunity for commingling of animals of the plaintiff with other animals of like breed and answering the same general description, identification must be made with reasonable certainty. In *Exchange State Bank* v. *Occident Elevator Co.*, 24 P. (2nd) (Mont.) 126 at 129, the court said: "The rule as to circumstantial evidence in a civil case is that a party will prevail if the preponderance of the evidence is in his favor. This court has said: 'The solution of any issue in a civil case may rest entirely upon circumstantial evidence. * * * All that is required is that the evidence shall produce moral certainty in an unprejudiced mind. * * * In other words, when it furnishes support for the plaintiff's theory of the case, and thus tends to exclude any other theory, it is sufficient to sustain a verdict or decision.'" In that case, the action was for the conversion of wheat. The issue was whether a third party selling wheat to the defendant had a right to do so, or whether the wheat was covered by plaintiff's mortgage. Here also the vital issue was

one of identity as to which there was no direct evidence. In holding the circumstantial evidence sufficient to prove the conversion, the court laid stress on two important facts: (1) that it was shown that the third party had raised no wheat other than that covered by mortgage, and (2) that when he delivered the wheat to the defendant the third party had admitted its identity as mortgaged wheat. If, in the case here before us, it had been shown that Elwell had possession of no cattle other than the herd of the plaintiff and that when he sold cattle to the defendant he had admitted plaintiff's interest, the proof would obviously have been greatly strengthened.

Here is a dispute between an innocent loser of property and an innocent purchaser of property. Upon one or the other the loss must fall. The defendant gains nothing by his innocence if, in fact, Elwell sold him the plaintiff's cattle, but likewise the plaintiff cannot push the loss upon the defendant in the absence of an adequate showing that the cattle were in fact plaintiff's and not another's. The dishonesty of Elwell in the transaction with the defendant cannot be assumed, no matter what lively suspicions the plaintiff may entertain in that respect, based on surmise and conjecture. If Elwell's dishonesty be not immediately assumed, several theories in explanation of the transaction present themselves. There is no evidence whatsoever as to what cattle were maintained on the Elwell farm. Admittedly, Elwell owned and maintained the facilities for pasturing and keeping cattle and, by accepting a cow in payment from the plaintiff, he displayed an interest in owning and keeping cattle of his own. If he had other such cattle, the sale to the defendant may have been from his own herd. With the plaintiff he entered into a transaction of pasturing the cattle of another for pay, and he may have taken the cattle of other persons to pasture in the same manner. A sale of such cattle might be authorized by the owners. Here several plausible theories present themselves which are equally consistent

with the evidence. The evidence must have selective application as to the one adopted by the fact finder. The theory adopted by plaintiff must emerge as the most probable, and the evidence, if it is to suffice, must tend to eliminate other theories by force of the greater probability and rational consistency of the plaintiff's theory. This requirement is not met by wishful thinking or a likely guess. *New York Life Ins. Co.* v. *McNeely*, 52 Ariz. 181, 79 P. (2nd) 948; *Lym* v. *Thompson*, 184 P. (2nd) (Utah) 667; *Jordan* v. *Coach Co.*, 150 Me. 149. The question of proof of identification in conversion cases has often been found troublesome and difficult by courts. In *Hardison* v. *Jordan*, 141 Me. 429, where blueberries were picked in the vicinity of the dividing line between plaintiff and defendant, the evidence was insufficient to determine identity. In *Simpson* v. *Shaw*, 71 Ariz. 293, 226 P. (2nd) 557, identification of cattle was sufficent because made by brands and ear tag numbers. In *Hayes* v. *O'Dell*, 236 S. W. (2nd) (Mo.) 367, resting on circumstantial evidence, the description of a brindle heifer about two years old with a white leg and spike horns two inches long with weight estimated at 500 pounds was not deemed sufficiently definite where there was opportunity for the cattle to have come from sources other than plaintiff. In summation, the court said at page 370: "It is true this (that the identical cattle in defendant's possession were the cattle of the plaintiffs) may be proved by circumstantial evidence but a verdict cannot stand that is based upon suspicion, conjecture, guesswork, surmise or mere possibility, only. There must be substantial evidence and in this case, it is lacking." In *Satterfield* v. *Knippel et al.*, 169 S. W. (2nd) (Tex.) 795, it was held that a description of one bald-face cow did not establish identity with an animal described as one of four red Hereford cows with white faces. At page 797, the court said: "Another item in the bill of sale consisted of 'Two Jersey horned cows and calves.' (Plaintiff) testified that these cows were the two Jersey

cows which she bought from (a third party). This testimony was also based solely upon the bill of sale and (plaintiff's) familiarity with the descriptions of her cattle, since (plaintiff) had not seen the cattle after they were delivered to (defendant), and we think it is obvious, also, that she could not know from these sources alone that the 'two Jersey horned cows and calves' described in the bill of sale were the identical cattle owned by her and that had been located in (defendant's) pasture. * * * She failed, therefore, to establish her ownership of the identical property which she alleged had been converted by the (defendants)." In the Texas case, the plaintiff had little more to go on than the description of cattle contained in the bill of sale to defendant. In the case before us, the plaintiff likewise had little more to go on than the statements attributed to the defendant that the seven cattle purchased by him from Elwell corresponded "in more or less a general way" to the description of the twenty cattle in the list shown him, and that defendant had purchased from Elwell "a pair of steers and four Holstein heifers and a Guernsey heifer," not otherwise identified. We think a statement of the court in a case involving the conversion of cotton in *Anderson, Clayton & Co.* v. *Rayborn et al.*, 192 So. (Miss.) 28, has application here. "The evidence offered tends only to raise a lively suspicion or conjecture that the cotton found in the warehouse of the (defendant), in New Orleans, Louisiana, was the cotton which the complainants had lost."

One of the cattle declared upon by the plaintiff was a Jersey heifer. In his supplemental brief, the plaintiff admits that the Jersey heifer is not sufficiently identified and all claim as to conversion of that animal is abandoned. We think, however, that the identification of the four Holstein heifers and two steers also declared upon is hardly more satisfactory than that provided in connection with the Jersey, and we find no error in the action of the presiding justice below.

*Exceptions overruled.*