**Avis D. MAYER**

v.

**Phyllis W. FULLER.**

Supreme Judicial Court of Maine.

Dec. 4, 1968.

Silsby & Silsby, by Herbert T. Silsby, II, Ellsworth, for plaintiff.

David W. Fuller, Bangor, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

WILLIAMSON, Chief Justice.

This is a real action under M.R.C.P. Rule 80A. The Court sitting without a jury ordered judgment entered for the plaintiff for title in fee simple and possession of the demanded premises and also for $1.00 with costs. The defendant appeals.

The controversy centers about the dividing line bewteen two lakeshore lots, namely, the plaintiff's lot on the north known as the "Community Lot" and the defendant's lot on the south known as the Bates or Fuller lot. The lots are bounded on the west by the lake and on the east by a straight road running north and south known in part as Second Road and in part as Third Road.

The title of both parties originates from the same owner, Annie Louise Daley, who also owned a lakeshore lot (known as the Lindsay lot) lying north of the Community lot and bounded on the east by Second Road.

The plaintiff acquired title by a quitclaim deed with personal covenants of warranty from Daley in 1952, recorded in 1965, conveying in part the following:

"Also a section of land on the shore of said lake one hundred feet square known as the Community Lot (so-called). It is understood and agreed upon that said road and lot are subject to use with others as tenants in common."

In the complaint the plaintiff describes the Community lot as follows:

"A certain lot or parcel of land bounded as follows: Beginning at a bolt set in the ground on the easterly shore of Phillips Lake at the southwest corner of land of Fred Lindsay, now or formerly; thence easterly along said Lindsay's south line 88 feet more or less to said Lindsay's southeast corner at Second Road, so called; thence southerly 99.6 feet more or less along said Second Road and along Third Road, so called to a bolt set in the ground at the northeast corner of land of Phyllis W. Fuller; thence along said Fuller's northerly line 92 feet more or less to a bolt set in the ground at the shore of Phillips Lake; thence northerly along the shore of Phillips Lake to the point of beginning."

The "Community Lot" is first mentioned in a 1933 deed from Daley to one Lindsay of the lot "bounded on the generally southerly side by what is known as the 'Community Lot'."

In 1938 Daley conveyed to one Bates, and in 1941 Bates conveyed to the defendant, then Phyllis Frost, now Fuller, a lot described as follows:

"Beginning at a point in the high water mark on the shore of said Lake at the northwesterly corner of a lot now owned or occupied by one Hogan and running thence along said high water mark of said Lake in a northerly direction 50 feet, more or less, to a stake at the southwesterly corner of the Community lot, so called; thence easterly along the southerly line of said Community lot 93 feet, more or less, to stake in the westerly line of Third Road, so called; thence southerly along said line of said Third Road, 50 feet, more or less, to the northeasterly corner of the Hogan lot; thence westerly along the northerly line of said Hogan lot 113 feet, more or less, to the point began at."

The 1938 Bates deed also includes the following: "Said grantee to have the use, in common with others, of a lot of land that I have set aside on the shore of said Phillips Lake, at the end of said Elm Point Road, for bathing and landing of his private boats, but shall not let his boats for hire."

Like provisions appear in the 1933 Lindsay deed and in the 1941 Frost (Fuller) deed. Without question, the "lot of land" is the Community lot which includes the area between the Linsay lot on the north and the Fuller lot on the south.

Apart from the pleadings the record consists of several deeds, a plan prepared for the plaintiff by a surveyor, and the findings and conclusions of the Court. The oral testimony was not taken by a reporter. The Court accepted, as it was entitled to do, the evidence of the surveyor and the plan.

The parties are in agreement, as is shown on the plan, (1) that the northeast corner of the Fuller lot (and the southeast corner of the Community lot) is marked by a bolt at Third Road; (2) that the south line of the Fuller lot, or Hogan line, is marked by a fence running to the lake from Third Road at a point fifty-one feet plus or minus south of the northeast corner of the Fuller lot.

It is the location of the northwest corner of the Fuller lot at high water mark which is in issue. The plaintiff places the corner fifty-one feet plus or minus northerly by high water mark from the Hogan line, at which point the surveyor placed the bolt mentioned in the complaint and shown on the plan. The position of the defendant is that the dividing line runs at a right angle to Third Road to a point on the shore approximately ten feet northerly of the end of the line claimed by the plaintiff.

 The applicable principles of law are well settled. Boundaries are established in descending order of control by monuments, courses, distances and quantity. What are the boundaries is a question of law, and where the boundaries are is a question of fact. Hardison v. Jordan, 142 Me. 279, 50 A.2d 447; 141 Me. 429, 44 A.2d 892 (2 cases); Murray v. Munsey, 120 Me. 148, 113 A. 36; Bryant v. Maine Cent. Railroad Co., 79 Me. 312, 9 A. 736; Ames v. Hilton, 70 Me. 36; Hathorn v. Hinds, 69 Me. 326; Chandler v. McCard, 38 Me. 564; Heaton v. Hodges, 14 Me. 66.

 The description of the Fuller lot begins at a point on the Hogan line fence at hight water mark. The stake "at the southwesterly corner of the Community lot, so called" has not been found. The surveyor acordingly ran the line along high water mark fifty-one feet more or less and there placed the bolt mentioned above to mark the northwest corner of the Fuller lot. There is no suggestion that the distance under the circumstances does not meet the call in the deed.

The north line of the Fuller lot from the surveyor's bolt to Third Road measures ninety-two feet plus or minus, thus meeting closely the distance stated in the 1938 Bates deed of ninety-three feet more or less.

The line so drawn meets the description in the deed, unless it is to be controlled by the call "easterly along the southerly line of said Community lot."

In the instant case we have no south line of the Community lot to be taken as a monument to which other calls yield. The first and only description of the south line is found in the 1938 Bates deed from Daley (repeated in the 1941 Frost-Fuller deed). In the grant of rights in common "of a lot of land that [Annie Louise Daley] has set aside," found in the 1933 Lindsay deed, there is no further description of the Community lot. Accordingly, the dividing line as a matter of law runs from the northwest corner of the Fuller lot fixed as above stated to the agreed corner of Third Road.

The defendant sought to establish (1) that the north line of the Lindsay lot ran at a right angle to Second Road; (2) that the south line of the Lindsay lot, being also the north line of the Community lot, ran ninety-six feet distant from the north line and hence also at a right angle to the Road; and (3) that the conveyance of "one hundred feet square known as the Community Lot" to the plaintiff in 1952 placed the south line also at a right angle to the Road.

The surveyor tested his dividing line with lines of the Lindsay lot found by him. His plan shows the Community lot with 99.6 feet on the road, one hundred feet on the west, and the north and south lines parallel, or approximately so, to both the north line of the Lindsay lot and the south line of the Fuller lot. The lines are not, however, at a right angle to the road.

The decision is reached, in our view, not by turning northerly for a line, but by consideration of the boundaries of the Fuller lot from the agreed corners on the road, the agreed south or Hogan line, and the northwest corner established by the line of fifty-one feet more or less along high water mark.

The plaintiff is not estopped to deny the location of the line described in the complaint. From the plan it appears that a cottage owned by the defendant and near the shore lies partly in the disputed area and partly as well north of the line claimed by the defendant.

We do not know when the cottage was built, or whether Annie Louise Daley, or the plaintiff, had any reason from 1941 to the survey made shortly before the action was commenced in 1966 to know that the house was built over the line claimed by the plaintiff. Without doubt, the defendant believed the cottage was on her lot, but this is not sufficient to deprive the plaintiff of her land.

The Court held that the plaintiff had title in fee simple to the land described in her complaint. Such holding, however, was not intended to deny to the defendant or to others whatever rights they might have in common in the use of the Community lot. Such rights would not include the right to maintain the cottage on the Community lot.

The entry will be

Appeal denied.