George E. PERKINS and Ruth Perkins

v.

Wyman CONARY.

Supreme Judicial Court of Maine.

Oct. 20, 1972.

Silsby & Silsby, by Frank B. Walker, Ellsworth, for plaintiffs.

Blaisdell & Blaisdell, by Kenneth W. Blaisdell, Ellsworth, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

On July 11, 1968 the plaintiffs brought their complaint to establish their title to land purchased from the defendant June 26, 1957 and located on Lower Toddy Pond, in Orland, Maine. A single Justice heard the complaint without a jury and ordered judgment for the plaintiffs for title in fee simple and possession of the demanded premises together with damages assessed at one dollar and costs. The defendant appeals to this Court on the ground that the findings of the Justice below are not supported by credible evidence. His contention is untenable.

The plaintiffs' warranty deed bounded and described the land conveyed as follows:

"On the easterly side of Lower Toddy Pond, so-called, and *beginning at the northeasterly corner of land of Wilbrod Bouchard; thence westerly by said Bouchard land and an extension of his line to said pond*; thence northerly by said pond about 100 feet to an iron rod; thence easterly and parallel to the first described lot about 150 feet to an iron rod; thence southerly at right angles to point of beginning." (Emphasis added.)

The reference Bouchard land was conveyed by Mr. Conary in 1956 and that warranty deed bounded and described the subject premises of the conveyance as follows:

"On the Easterly side of Toddy Pond, so-called, and *beginning at the shore of said pond at the northerly edge of Muskrat Cove, so-called, at an iron pin in a large boulder; thence in an easterly direction 100 feet more or less, to an iron pin in a large boulder*; thence

Southerly at right angles 300 feet, more or less, to an iron pin in a large boulder; thence Westerly and parallel to the first line 100 feet, more or less, to said pond; thence Northerly by said pond 300 feet more or less, to point of beginning." (Emphasis supplied.)

It is apparent from both deeds that the northerly line of the Bouchard lot and the southerly line of the Perkins land, in part at least, run together. The language of the Perkins deed seems to indicate that the southerly line of the Perkins lot runs beyond the northwesterly corner of the Bouchard land marked by an iron pin in a large boulder located "at the shore of said pond at the northerly edge of Muskrat Cove, so-called"

—"thence westerly by said Bouchard land *and an extension of his line to said pond*"—(Emphasis provided.)

The determination of the location of the plaintiffs' southerly line on the face of the earth was the issue presented to the single Justice. The Court below found that said plaintiffs' southerly line was as surveyed by Sherwood Tuell, a land surveyor whose qualifications were not challenged. The disputed line was stated to be 217.6 feet long and was shown on the surveyor's plan to begin at what purports to be the northeast corner of the Bouchard lot identified by an existing monument consisting of an iron pin in a large boulder and running 147.6 feet to another monument or iron pin in another large boulder, the line then continuing in the same direction another 70 feet, more or less, to Toddy Pond.

Engaged by Mr. Perkins when the land dispute arose, the surveyor met with him on the land and was handed the Perkins deed, a copy of the Bouchard deed and also a copy of the Mitchell deed conveying land directly north of the Perkins lot and purchased by one Mitchell from Mr. Conary at the same time as the Perkins land was bought. The surveyor was then shown the large boulder with an iron pin in it which Mr. Perkins advised he be-

lieved to be the northeast corner of the Bouchard lot. Both Mr. Perkins and Mr. Mitchell testified that this same boulder with the pin in it was pointed out to them as the northeast corner of the Bouchard land by Mr. Conary when they were on the land for purposes of negotiations. This was disputed by the defendant.

Mr. Tuell, prior to mapping the plot of land, looked the area over and found the second large boulder with the iron pin in it which was closer to the pond. On the shore of the pond he saw that some bull-dozing had been done with large rocks pushed out and a great amount of sand fill put in so that the shore of the pond was, in his opinion, much farther artificially from what it originally was. He gave it as his opinion that the large boulder with the iron pin in it which was farther away from the shore marked the northeasterly corner of the Bouchard lot while the second boulder closer to the pond was put there to show the direction of the Bouchard line and that the disparity in his survey of some 117.6 feet over the deed call of a distance of some 100 feet, more or less, was due to the extensive bulldozing and filling at the shore. Mr. Perkins corroborated the surveyor's testimony to the effect that he had filled in a substantial amount of land on his shoreside of Toddy Pond following his purchase of the land. Thus, the shoreline, as it appeared at the time of the survey, was substantially farther away from where it was at the time the call in the Bouchard deed was set out. Furthermore, the survey proved the loose-ness of the Bouchard call of 100 feet, more or less, between the two monuments on the northerly line of the Bouchard lot, since it showed the actual distance between the two monuments to be 147.6 feet, but, so far as the evidence reveals, these two boulders with iron pins in them as described in the Bouchard deed were the only ones to be found in the area.

It was essential in establishing the southerly line of the Perkins lot that the northeast corner of the Bouchard property

and the direction of its northerly line be ascertained and delineated on the face of the earth. The actual location of the Perkins land depended upon the resolution of that initial determination.

The applicable principles of law are well settled. The intention of the parties, ascertained from the deed itself, ordinarily must prevail. However, to secure the certainty, precision and permanency of muniments of title, certain positive rules of law have evolved which are made to control and parties to real estate transactions must heed the same, if they would effectuate their intent, or avoid consequences they did not intend. See, Page v. Nissen, 1969, Me., 254 A.2d 592; Maker v. Lazell, 1891, 83 Me. 562, at page 565, 22 A. 474, at page 475. We are called upon in the instant case to apply such a rule which requires that boundaries be established *in descending order of control* by monuments, courses, distances and quantity. Mayer v. Fuller, 1968, Me., 248 A.2d 140. The prevailing rule respecting the establishment of boundaries is that calls for distances are controlled by and must yield to natural objects or landmarks or permanent artificial monuments. Purchasers look to actual monuments, which they are, or should be, careful to preserve. This Court, in the case of Esmond v. Tarbox, 1830, 7 Me. 61, early recognized that public policy, as well as the principles of law, required, for the protection and security of owners of real estate in their titles and possessions, such a rule which mandates conformity with stated monuments in deeds, when these monuments can be identified on the surface of the earth.

The proper application of the rule does not compel an automatic disregard of courses and distances in apparent conflict with existing monuments. To the contrary, where the issue involves the identity of the monuments claimed to be found on the surface of the earth with those referred to in the deed, courses and distances, if relevant to determine proper

identity of the monuments referred to in the deed, must be given their due evidentiary value in reaching the preliminary issue of identity of these monuments. Tyler v. Fickett, 1882, 73 Me. 410.

 What are the boundaries is a question of law, but *where the boundaries are on the surface of the earth is a question of fact.* Mayer v. Fuller, supra. The single Justice below made findings of fact as to the location of the plaintiffs' southerly line and adopted the surveyor's survey and plan. In his testimony, the surveyor described the manner in which he had surveyed the property, vouched for the existence of two boulders with iron pins in them which he had found sitting on the surface of the earth and explained his use of them in meeting the calls recited in the deeds. He further corroborated the testimony of Mr. Perkins relating to extensive bulldozing and filling from the shore out to the water and gave his explanation for the apparent existing disparity between the distances mentioned in the deed and the longer lines of his survey. The weight to be given to the opinions of surveyors, as well as the credibility of witnesses, was for the single Justice. Sowles v. Beaumier, 1967, Me., 227 A.2d 473; Garland v. Vigue, 1967, Me., 236 A.2d 324.

 Where the defendant-appellant seeks to challenge the findings of a single justice in a jury-waived trial, it is his burden to satisfy the Law Court that the findings below were not supported by the evidence, and such factual determinations will not be disturbed unless clearly erroneous. Kenney v. Spaulding, 1970, Me., 263 A.2d 272; Gosselin v. Better Homes, Inc., 1969, Me., 256 A.2d 629; Rule 52(a), M.R.C.P. This burden, the defendant-appellant has failed to carry.

The entry will be

Appeal denied.

All Justices concurring.