John **RUSHA**

v.

Ellis Z. **LITTLE** and Helen R. **Little.**

Supreme Judicial Court of Maine.

Oct. 3, 1973.

Fales & Fales, by Roscoe H. Fales, Lewiston, for plaintiff.

Pierce, Atwood, Scribner, Allen & McKusick by Peter L. Murray, Portland, for defendants.

Before DuFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

Plaintiff and Defendants in this suit both claim title to a triangular piece of real property located on the shore of Sabattus Lake in Greene. The Plaintiff seeks an injunction against the Defendants' trespass upon or sale of the disputed land, whereas the Defendants counterclaim for a declaratory judgment establishing their claim of ownership. After making findings of fact and rulings of law, the Single Justice below declared that the Defendants are the owners of the land in question, thus dismissing the Plaintiff's complaint and granting the Defendants' counterclaim. From this adverse ruling, the Plaintiff has appealed. We deny his appeal.

Plaintiff and the Defendants are neighboring lot owners on the lake shore, Plaintiff's land lying just north of the Defendants' property. Before 1955, both tracts were included in one larger parcel owned by a Mrs. Clarry. In 1955 a civil engineer platted part of her property, including the portion now claimed by the Defendants. This plan has subsequently been called "The Barron plan". A series of conveyances beginning in 1956 details the titles to property now claimed by both parties to this action.

On July 10, 1956, Mrs. Clarry conveyed by warranty deed the northern part of the land now owned by the Defendants to a couple named Grondin. This parcel abuts the southern edge of the Plaintiff's land and defines the disputed boundary between the two lots. The Clarry-Grondin deed states that the parcel is

"shown on a plan entitled 'Plan of Property Owned by Effie Clary, Greene, Maine', drawn by George H. Barron, dated September 15, 1955 and bounded and described as follows:

*Beginning* at a point on the Easterly line of a twenty foot (20) road running approximately parallel with and one hundred (100) feet, more or less, Westerly of the shore of said lake, said point being one hundred (100) feet northwesterly of the intersection of said road and the Northwesterly line of a twenty-five (25) foot right of way leading from said road to said lake, which right of way is the most northerly of the four shown on the above described plan;

thence running Northwesterly along said road fifty (50) feet;

*thence turning and running Northeasterly and parallel with the Northwesterly line of said right of Way, one hundred eleven (111) feet, more or less to the low water mark of said lake* [Emphasis has been added here to denote the common boundary];

thence turning and running in a general southeasterly direction by the said low water mark about fifty (50) feet to the Northwesterly line of property conveyed by this Grantor to Joseph T. Grondin et al;

thence turning and running southwesterly by the last mentioned line about one hundred eight (108) feet to the point of beginning."

The Defendants later received title to the above property, as well as to the more southerly part of their present lot, by conveyance from the original grantee, Maurice Grondin, and Dorothée Neault in 1961. This last mentioned conveyance was by warranty deed and described the property exactly in the manner used by the Clarry-Grondin deed, quoted above.

The Plaintiff's title to the parcel which abuts the Defendants' land descends originally from a deed from the common grantor, Mrs. Clarry, to Maurice Clavet on November 21, 1958. The Clarry-Clavet deed describes the property involved in the following manner:

"Commencing at a point on a right of way, which point is the most northwesterly corner of land of Maurice Grondin; thence, northerly, by said right of way, one hundred thirty (130) feet, thence easterly to the shore of Sabattus Lake to a point fifty (50) feet northerly from said Grondin's most northeasterly corner; thence, by the shore of said Sabattus Lake to said Grondin's line; *thence by the northerly line of said Grondin's land to the point of beginning.*" (Emphasis again denotes the common boundary.)

The Plaintiff acquired this lot, with another parcel, in 1968 by deed from Clavet's grantee. The 1968 conveyance described Plaintiff's lot, the boundary of which is now in question, almost exactly as it appears above, the only change in wording being irrelevant to the current issue.

This controversy has been precipitated by the fact that the shoreline which borders each lot in the disputed area is curving. Although the common line which is in issue is described in the Defendants' deed as running "one hundred eleven (111) feet, more or less to the low water mark of said lake", the iron pin which stands at 111 feet from the beginning of this call is actually at the edge of a bank which slopes steeply to the curving shoreline. A straight extension of the boundary line from this stake to the low water mark of the lake will increase the Defendants' shoreline and virtually cut off that of the Plaintiff. However, if—as the Plaintiff contends—the common boundary line is intended to turn away from its straight course at this stake and head to the low water mark in the *nearest* direction, at an angle, the curving shoreline falls within the Plaintiff's property. Thus, the basic issue is to determine if the boundary line in question is to extend as a continuing straight line beyond the iron marker to the water or is to remain straight only until reaching the marker and then turn toward the closest point of low water mark. Adoption of one of these two boundaries will resolve questions of ownership to the triangle-shaped shoreline parcel which both parties claim.

This Court has often stated that what are the boundaries is a question of law, and where the boundaries are is a question of fact. *See, e. g.,* Mayer v. Fuller, Me., 248 A.2d 140 (1968). As the Plaintiff challenges the findings of the Single Justice below in a non-jury trial, he must satisfy this Court that these findings are not supported by credible evidence. Unless these findings are found to be "clearly erroneous", they will not be disturbed on appeal.[1] Perkins v. Conary, Me., 295 A.2d 644 (1972); Kenney v. Spaulding, Me., 263 A.2d 272 (1970); M. R.C.P., Rule 52(a).

---

1. Plaintiff asserts that our decision in C Company v. City of Westbrook, Me., 269 A. 2d 307 (1970), requires that the "clearly erroneous" test not be used in interpretation of deeds. However, in that case there were no findings of fact by the Single Justice and no material differences of fact existed. For further discussion where the facts are "substantially undisputed", *see,* Utz v. Utz, Me., 273 A.2d 303 (1971) and Allstate Ins. Co. v. Government Employees Ins. Co., Me., 263 A. 2d 78 (1970).

The guidelines for decision in a boundary line case were clearly pronounced by this Court in the recent case of *Perkins v. Conary, supra.* In that instance, as here, it was essential to establish a boundary line between two properties prior to resolving a question of title. Certain language of that opinion seems particularly appropriate to the current dispute:

"The applicable principles of law are well settled. The intention of the parties, ascertained from the deed itself, ordinarily must prevail. However, to secure the certainty, precision and permanency of muniments of title, certain positive rules of law have evolved which are made to control and parties to real estate transactions must heed the same, if they would effectuate their intent, or avoid consequences they did not intend. (Citations omitted.) We are called upon in the instant case to apply such a rule which requires that boundaries be established *in descending order of control* by monuments, courses, distances and quantity. (Citation omitted.) The prevailing rule respecting the establishment of boundaries is that calls for distances are controlled by and must yield to natural objects or landmarks or permanent artificial monuments." *Perkins v. Conary,* 295 A.2d at 646.

■ In addition to the preceding, there are other rules of construction applicable to the present situation. Certainly, a grantor cannot convey to a second grantee what had already been conveyed to a prior grantee. *Cf.* Page v. Nissen, Me., 254 A. 2d 592 (1969). Further, ambiguities present in a deed will be construed most harshly against a grantor and in favor of a grantee. C. Company v. Westbrook, *supra.* One who accepts a deed describing his land in terms of an adjoining tract is bound by the prior tract as a boundary and a monument to which any distances in the deed must yield. Hardison v. Jordan, 141 Me. 429, 44 A.2d 892 (1946).

■ Application of the foregoing principles to the situation at hand convinces us that the disputed property belongs to the Defendants. As the Defendants' predecessors in title received their property from the common grantor, Mrs. Clarry, prior to title vesting in the Plaintiff's predecessors, the Defendants possess the elder title. The Defendants are also the beneficiaries of the rule which construes ambiguities most strongly against grantors. Furthermore, the later conveyed property now owned by the Plaintiff is described clearly in terms of the Grondin property, which is now the Defendants' land. This land becomes a monument which controls the boundary of the Plaintiff's land under the principle recited above. The Plaintiff's land cannot be determined without explicit reference to that boundary which separates the Plaintiff's land from that of the Defendants. Although Plaintiff claims that the distance of 111 feet, which ends at a stake, must govern the length of the disputed line, it is clear that the lake itself is a monument to which the distance must yield. The iron marker placed at the edge of a slope to the water could well be placed there due to surveyor's necessity. The deed expresses the distance in terms of "one hundred eleven (111) feet, more or less to the low water mark of said lake . . . ." This description itself indicates an uncertainty in distance. In describing the boundary, the Defendants' deed calls for a specific direction which the line is to follow: "parallel with the northwesterly line of said right of way". The right of way is the southerly edge of the entire tract owned by the Defendants. Thus, the northern boundary is called parallel to the southern edge, leading one to extend the northern boundary in a continual straight line to the low water mark. Such a description of the Defendants' property, loosely termed a parallelogram, excludes the disputed property from the Plaintiff's ownership.

In the trial below, the Single Justice had the opportunity to hear the testimony of surveyors for both parties. He obviously

was persuaded that the Defendants' surveyor had properly laid out boundaries on the face of the earth. The weight to be given to the opinion of surveyors is left to the Presiding Justice as trier of fact. Sowles v. Beaumier, Me., 227 A.2d 473 (1967).

In conclusion we find that there is credible evidence to sustain the Single Justice's findings in favor of the Defendants. Since these findings are not "clearly erroneous", the Plaintiff has failed to meet his burden, and his appeal must fail.

The entry will be:

Appeal denied.

WEBBER, J., sat at oral argument but retired before the adoption of this opinion.